| | |
|---|---|
| 1  Veronica Ogunsula | BALTIMORE-NIGHT BOX |
| 2  9801 Apollo Drive #6334<br>Largo, Maryland 20792<br>240-486-1427 | AUG 31 PM 10: 15 |
| 3  ogunsulav@gmail.com | U.S. BANKRUPTCY COURT<br>DISTRICT OF MARYLAND |

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

NORTHERN DIVISION

VERONICA W. OGUNSULA,

        Plaintiff,

vs.

MARYLAND STATE POLICE,

TFC MICHAEL WARRENFELTZ

15 TURNPIKE DRIVE

PERRYVILLE, MD 21903
*Individual and Official Capacity*

COLONEL WOODROW W. JONES III

SUPERINTENDENT,

MARYLAND STATE POLICE

1201 REISTERSTOWN ROAD

PIKESVILLE, MARYLAND 21208
*Official capacity*

MICHAEL CAPASSO

WARDEN

HARFORD COUNTY DETENTION CENTER

1030 ROCK SPRING ROAD

BEL AIR, MARYLAND 21014

*Official capacity*

        Defendants

Case No.: [Number]

Jury Trial: ☒ Yes or No

OGUNSULA VS MD STATE POLICE ET. AL

OGUNSULA VS MD STATE POLICE ET. AL - 1

## COMPLAINT

### I. Introduction

Veronica Ogunsula is an American Citizen and a resident of the State of Maryland.

She brings this 42 U.S.C. § 1983 action against the above named Defendants for the following violations of federal constitutional rights:

<u>4th Amendment</u>

TFC Warrenfeltz violated Ms. Ogunsula's 4th Amendment rights when he pulled her over under color of State of Maryland law without an individualized reasonable suspicion that she had or was in the process of committing a traffic violation or crime. Indeed the only distinguishing feature that the police officer could observe was that she was an African American female driving a late model SUV.

<u>14th Amendment</u>

Under color of state law, TFC Warrenfeltz violated Ms. Ogunsula's 14th Amendment rights which guarantee her equal protection under law in the State of Maryland and within the United States to move freely without be stopped or profiled because of her race. Further, TFC Warrenfeltz as well as correctional officers under the direction of the Warden of the Harford County Maryland Detention Center violated Ms. Ogunsula's due process rights by detaining her without making known the charges against her and subsequently continuing to hold her after she was granted bail in a hearing before a judge. Additionally, correctional officers confined her to a cell for an excessive amount of time which cause her economic harm and emotional distress.

### II. Jurisdiction and Venue

1. This Court has jurisdiction over the subject matter and parties pursuant to 28 U.S.C. § 1331 as this case involves questions of federal law. The Court also has jurisdiction pursuant to 28 U.S.C. § 1343 because Plaintiff seeks damages for violation of her civil rights.

2. This Court has supplemental jurisdiction over any related state law claims pursuant to U.S.C. § 1376 (a) because those claims form part of the same case or controversy under Article III of the United States Constitution. Plaintiff's state law claims, if added in the future, share all common operative facts with her

OGUNSULA VS MD STATE POLICE ET. AL - 2

federal law claims, and the parties are identical. Resolving Plaintiff's federal and state claims in a single action serves the interests of judicial economy, convenience, consistency, and fairness to the parties.

        3.     Venue is proper in, and Defendants are subject to the personal jurisdiction of, this Court because Defendants are an agencies within the State of Maryland and most, if not all, of the events giving rise to this action occurred in the State of Maryland.

III.    Statement of the Claim

        On Wednesday, August 30, 2017, Veronica Ogunsula, an African American woman who is a resident of the State of Maryland, left her residence in College Park, Maryland to travel to Highstown, New Jersey. She traveled to 95 North via the Baltimore-Washington Parkway toward Baltimore. She passed through the Fort McHenry toll and preceded up 95 north. A short time after passing through the Fort McHenry toll booth, she noticed a four door car pull up beside her and drive parallel with her vehicle. It seemed as if the car was "tracking" her and it was somewhat unsettling because the car had dark tinted windows. She looked over at the vehicle several times, but could not determine who was driving the car because of the tinted windows. At the time she was in the far left lane.

        She was driving about 60 or 65 mph. At first she thought the car was trying to pass her. As the car move passed her and she observed the rear of the car, she assumed it was a police officer because of a rear antenna. She glanced at her speed again to make sure she was not speeding. Because she was not speeding or breaking any traffic laws, she kept driving toward her destination.

        Using her left forefinger and thumb, she picked up an (one) Sony earbud (about the size of a peanut or small breath mint) from her lap. She quickly glanced to see if it was the left or the right earbud. She placed the earbud in her ear. She kept driving at the same speed toward her destination. She was not on a call on her cell. The cell phone was in the passenger seat because she was using the GPS for directions to Highstown.

        By this time the car had moved behind her. She quickly moved her cell phone to her lap to attach her earbud. She then used her signal and changed lanes to let the car behind her pass by. She was trying to get out of the car's way. The car shortly followed her and turn on its police lights to pull her over. She pulled over and stopped the car. The white officer walked to the car on the passenger side. He was dressed in a police uniform. She rolled down the window and he asked her if she was on her cell phone. She told him that she had moved her cell phone from the passenger seat to her lap. She was not talking on the cell phone. She was using the phone for GPS.

OGUNSULA VS MD STATE POLICE ET. AL - 3

He then asked for her registration and license. She handed him her license and the car's registration. She was driving a rental car from Budget Rental Car. She had rented and prepaid for the car from August 24-31, 2017 from the Budget Rental Car at Baltimore Washington Airport. There was no issue with the car she was driving. At no time prior to the traffic stop had Ms. Ogunsula operated the vehicle she was driving at an excessive speed or an unsafe manner. The officer did not observe her with her cellphone in her hand or her breaking any Maryland traffic laws, and he had no reasonable basis to believe that she had broken any traffic laws within the State of Maryland. The traffic stop was, at its inception, baseless.

The officer went back to his car and she remembers him taking a long time. She estimates that it was over 20 minutes. She became anxious because she had an appointment in New Jersey. She was about to get out of the car and walk to the officer's car, but she was nervous about doing that because of the numerous incidents where unarmed people were shot by the police. About that time the police officer walked back to her side of the car and instructed her to get out of the car. She was astonished and asked what the issue was. The officer began asking her questions about the contents of her pockets or if she had any weapons or drugs on her, or anything that could cut him. She replied no. She kept asking him what this was about. He said that there was an active warrant out for her arrest. Having not broken the law or been in police custody before, she was totally flabbergasted. She asked him what the warrant was for as he started searching and patting her down in front of the hood of his car.

The officer said "you know what the warrant is for". She said she did not know what the warrant was for. He said that she had stolen the car. She affirm that she had not stolen the car. Then she asked him when the warrant was issued. He said that it was June 2017. She knew at that time the charges were false.

The police officer handcuffed her in front of his car causing her humiliation. By then two other officers (all white, one officer was female) had arrived on the scene. He then preceded to begin putting her in the car. She complained that the handcuffs were too tight and asked him to loosen them. The handcuffs were cutting the skin on her wrists. He said that he would not, but the female officer motion for him to loosen the handcuffs and the office complied. He never stated that she was under arrest. The police officer never read her rights.

He put her in the front seat of the car and the officers searched the Budget rental car she was driving. She asked him for her small satchel that she was carrying in lieu of a purse. The officer would not allow her to take the satchel. She had some cash money that she was using for tolls, but the officer left the money in the car. The officer (Warrenfeltz) got the cell phone and its case with her license and bank cards. The female officer also

OGUNSULA VS MD STATE POLICE ET. AL - 4

1  spoke up saying that she should be able to take her purse, but the Warrenfeltz declined. She was told that the rental
2  car would be towed.
3        The police officer got in the car and preceded to drive. She was not told where she was going nor
4  was she ever read her rights. She was taken to the Harford County Police and Detention Center in Harford,
5  Maryland. As she and the officer walked inside, the officer had her cell phone in his hand and the GPS was still
6  audibly giving directions. The officer asked her for her cell phone password. She did not answer. The officer never
7  issued a traffic citation for the traffic stop. Ms. Ogunsula believes that the illegal traffic stop was done to detain Ms.
8  Ogunsula and to execute an illegal search.
9        The officers at the detention center took possession of her cell phone. After being searched at the
10 Harford Detention Center, she asked if she could make a call to New Jersey to tell them that she would not be able
11 to make the appointment. However, she was not allowed to make any phone calls at that time.
12
13       She was place in a cell with a cement bench and a toilet with several other people for several
14 hours. She asked if she could leave the cell to go to the bathroom and make a phone call. They let her use the
15 bathroom in the lobby and gave her the cellphone. It was after 8 or 9 p.m. before she was able to make a phone call.
16 She had been at the Detention Center for at least 8 or 9 hours.
17       When she was finally taken to see the commissioner, she was not aware of what the charges were
18 against her nor was she provided any details regarding the warrant. She did not even know if she was under arrest
19 because the officer had not said that she was under arrest or read her rights.
20
21       The commissioner did not seem to have all of the details regarding the charges. He said he would
22 find out the details regarding the charges. The Commissioner asked her if she wanted a public defender. She replied
23 no. She stated that she wanted to contact a private attorney. She asked the commissioner if he could release her or
24 what she had to do to be release. The commissioner told her that he could not release her and that she would have to
25 go before a judge the next day.
26       She was taken back to the holding cell. About two to three hours later she was taken back to the
27 commissioner. He provided a copy of a warrant stating that she had rented a car at National Airport in Arlington,
28 VA. She told the commissioner that the charges were false and that she had never rented a car at National Airport or

OGUNSULA VS MD STATE POLICE ET. AL - 5

in Virginia. After seeing the Commissioner, she called an attorney, but it was after midnight. When she called the number, she seemed to be disconnected by the phone system.

In the morning, she was transported in a van with other men and women to the Courthouse. They all were handcuffed and shackled with a fencelike barrier separating the men from the women. They were not in seat belts.

At the Hearing on Thursday, August 31st, she represented herself and told the Judge she was not guilty. The judge said that the charges against her were serious and set her bond at $5,000. When she was brought back from the hearing, she was not explained how the Bail would work. Eventually, the correctional officers told her that in order to be released she had to contact a Bail Bondsmen. She was shown a list on the wall. She attempted to make calls to get info on providers and fees. She was limited to making calls to three providers.

She had asked several times to make calls to someone who could pay the bail. She was told not now or that she would have to wait until she got out for her one hour break once a day. Ms. Ogunsula was never provided information on how the bail system work or what needed to be done to get released.

When asked about being released, correctional officers stated that she was to be extradited to Virginia. This conflicted with what the Judge had said at the Hearing so, she requested the Court documents from the Hearing on 8/31. She had not been given the documents when she left the Hearing. In fact, she was not given the documents until Friday, 9/02 after she requested to be taken back to Court to file a Motion regarding the Judge's Order. According to the correctional officers or Sheriffs, the Jail "orders" were stating something different than what the Judge had ordered. Ms. Ogunsula was told that, according to Harford Jail docs, she was to be detained and extradited to Virginia and that could take up to 90 days. She was not taken to Court as she requested. A Sheriff came to speak with her and stated that she needed a lawyer. She told him that she was representing herself at the moment.

Ms. Ogunsula's bail was paid on 9/1 but she was not released until 9/03/2017 after 11 pm. She was kept in her cell between 9/2 and 9/3 for more than 18 hours.

IV.   Relief

TFC Warrenfeltz while acting under color of Maryland law, violated Ms. Ogunsula's rights under the Fourth Amendment to the U.S. Constitution and is liable to her under a 42 U.S.C. § 1983 action. Ms. Ogunsula

OGUNSULA VS MD STATE POLICE ET. AL - 6

suffered damages, including economic and non-economic injuries as a consequence of these violations. Therefore, the Plaintiff is seeking an award of damages for emotional and economic harm to include:

    a) An award of compensatory damages against TFC Warrenfeltz and the Maryland State Police for an amount to be determined at trial; she also seeks an award of compensatory damages against the Harford Maryland Detention Center.

    b) An award of punitive damages against and TFC Warrenfeltz and the Maryland State Police for an amount to be determined at trial; she also seeks an award of punitive damages against the Harford County Maryland Detention Center.

    c) An award of Plaintiff's costs and reasonable attorneys' fees in this action pursuant to 42 U.S.C. §§ 1983 and 1988;

    d) An order requiring that all Maryland State Police adhere to annual diversity and anti-racial profiling training and provide signature of their compliance.

    e) An order requiring correctional officers provide to detainees and inmates information regarding their rights, access to phone calls, access to information regarding Bail bonds, and policies of the Detention facility regarding confinement to a cell and time allowed outside of the cell.

    d) An order granting such other relief as this Court deems just and proper.

## V.   Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

Dated this 31st of August, 2020.

OGUNSULA VS MD STATE POLICE ET. AL - 7


_[signature]_

Veronica Ogunsula, Pro Se
9801 Apollo Drive #6334
Largo, Maryland 20792
240-486-1427

OGUNSULA VS MD STATE POLICE ET. AL - 8