IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

VERONICA W. OGUNSULA,

    *Plaintiff*,

    v.

MARYLAND STATE POLICE, *et al.*,

    *Defendants*.

Civil Action No. ELH-20-2568

**MEMORANDUM OPINION**

The self-represented plaintiff, Veronica Ogunsula, an African American woman, had an unfortunate experience that began on August 30, 2017, while she was driving from her home in Maryland to New Jersey. In particular, a Maryland State Trooper conducted a traffic stop of plaintiff for alleged unlawful use of her cell phone while driving. During the stop, the trooper discovered an outstanding arrest warrant for plaintiff, issued in Virginia in March 2017, charging her with failure to return a rental vehicle. As a result, plaintiff was arrested and then taken to the Harford County Detention Center (the "Detention Center"), where she remained until the night of September 2, 2017. The Virginia warrant was subsequently withdrawn.

This civil rights suit followed on August 31, 2020, pursuant to 42 U.S.C. § 1983. Plaintiff initially sued the Maryland State Police (the "MSP"); Maryland State Trooper First Class Michael Warrenfeltz, in his individual and official capacity; Colonel Woodrow W. Jones III, superintendent of the MSP, in his official capacity; and Michael Capasso, Warden of the Detention Center, in his official capacity. ECF 1 (the "Complaint"). I shall refer to all defendants, other than Capasso, as the "MSP Defendants."

Plaintiff alleged, *inter alia*, that Warrenfeltz violated her rights under the Fourth and Fourteenth Amendments to the Constitution in connection with the traffic stop on August 30, 2017,

including by stopping her without reasonable suspicion and selectively based on her race.  ECF 1 at 2.  Moreover, she claimed that correctional officers working at the Detention Center violated her due process rights by detaining her without making known the charges against her; holding her after she obtained bail; and confining her for an excessive amount of time.  *Id.*

Defendants previously moved to dismiss or, in the alternative, for summary judgment. ECF 23 (MSP Defendants motion); ECF 31 (Capasso motion).  In addition to opposing both motions, plaintiff filed a motion to amend her Complaint (ECF 37), along with a proposed First Amended Complaint ("FAC").  ECF 37-1.  The FAC sought to sue Capasso in his individual capacity, and to add unnamed correctional officers as defendants.  *Id*. at 1-2.

In a Memorandum Opinion (ECF 41) and Order (ECF 42) of December 23, 2021, I construed Capasso's motion as a motion to dismiss and granted it, without prejudice and with leave to amend.  I also construed the MSP Defendants' motion as a motion to dismiss and granted it, with leave to amend only as to plaintiff's equal protection claim against Warrenfeltz, alleging selective enforcement based on race.  And, I granted plaintiff leave to file an Amended Complaint within 28 days of the docketing of ECF 42.  Specifically, I granted plaintiff leave to amend her suit against Capasso, to name him in his individual capacity, and to include facts that, if proven, would establish that he was personally involved with the alleged deprivation of her constitutional rights, either in a supervisory capacity or individually.  And, I also granted leave to plaintiff to amend the Complaint to allege facts that, if proven, would establish an equal protection violation as to Warrenfeltz.  *See* ECF 41 at 67; ECF 42 at 1.

In response to the Court's ruling, plaintiff filed ECF 48 on February 10, 2022.[1]   ECF 48 is a multi-part document that is difficult to characterize succinctly.   It is captioned "Motion for Leave to File an Amended Complaint," and seeks leave to file the attached "Second Amended Complaint," citing Fed. R. Civ. P. 15.   A redlined version of the proposed Second Amended Complaint ("SAC") is docketed at ECF 48-3.[2]   As discussed, *infra*, many of the changes in the SAC appear to be only marginally related to the issues for which the Court granted leave to amend. The SAC is accompanied by one exhibit.   ECF 48-1 at 9.[3]

ECF 48-1 is a memorandum captioned "Memorandum in Support of Plaintiff's Motion to Alter or Amend Judgment."   This document cites Fed. R. Civ. P. 59(e) and Fed. R. Civ. P. 60(a), and contains a wide-ranging critique of the Court's ruling of December 23, 2021, concluding with a request for the Court to "reconsider" that ruling.   ECF 48-1 at 8.   In other words, although it has been offered in connection with a "Motion for Leave to File an Amended Complaint," and makes occasional reference to the SAC, ECF 48-1 bears all the hallmarks of a motion for reconsideration.[4]

---

[1] Plaintiff requested (ECF 44) an extension to respond until February 10, 2022, which I granted. ECF 45. And, I denied a motion by Capasso (ECF 46) to rescind this extension as improvidently granted. ECF 47.

[2] Plaintiff has provided a redlined copy of the SAC. But, she has not included a clean copy, as is required by Local Rule 103.6(c). However, given that plaintiff has filed a redlined copy of the SAC (ECF 48-3), the content of the SAC is clear.

In ECF 48, plaintiff refers to her previous proposed Amended Complaint as the "First Amended Complaint," and to the submission docketed at ECF 48-3 as the "Second Amended Complaint." This is not quite correct: the FAC was proposed but never became an operative pleading. However, given that defendants adhere to plaintiff's "FAC" and "SAC" terminology, I shall use the same terms.

[3] The exhibit is docketed at ECF 48-1 at 9, rather than with the SAC at ECF 48-3. But, it is clear that plaintiff intends for it to be considered as an exhibit to the SAC. The SAC also appears to reference another exhibit (*see* ECF 48-3 at 3), but it has not been included.

[4] ECF 48-2 is a copy of the FAC, and ECF 48-4 is a copy of the original Complaint.

Keeping in mind plaintiff's pro se status, ECF 48 has three components.  First, per the Court's ruling of December 23, 2021, the SAC (ECF 48-3) is the operative pleading as to those issues where the Court granted leave to file an Amended Complaint.  Second, ECF 48 seeks reconsideration of the Court's ruling of December 23, 2021.  ECF 48-1.  Third, plaintiff requests leave to amend her Complaint more broadly, via the SAC, even as to issues where the Court did not previously grant leave to amend.  ECF 48; ECF 48-3.

Defendants seek to dismiss ECF 48.  ECF 49; ECF 51.  Capasso has filed a "Motion to Dismiss First and Second Amended Complaints, or in the Alternative, Motion for Summary Judgment."  ECF 49.  This motion is supported by a memorandum (ECF 49-1) (collectively, the "Capasso Motion").  And, the MSP Defendants have filed a "Motion to Dismiss Second Amended Complaint and Opposition to Plaintiff's Motion to Alter or Amend."  ECF 51.  It is supported by a memorandum (ECF 51-1) (collectively, the "MSP Motion").

Plaintiff opposes both motions.  ECF 55 (the "Capasso Motion Opposition"); ECF 56 (the "MSP Motion Opposition").  The MSP Defendants have replied.  ECF 57.  Capasso has not replied, and his time to do so has passed.

No hearing is necessary to resolve the motions.  *See* Local Rule 105.6.  For the reasons that follow, I shall deny plaintiff's motion for reconsideration; grant plaintiff leave to file the SAC, which revives her reasonable suspicion claim against Warrenfeltz; grant the Capasso Motion; and grant the MSP Motion, except as to plaintiff's reasonable suspicion claim against Warrenfeltz.

## I. Factual Background[5]

To avoid a needlessly lengthy opinion, I assume familiarity with the factual background and legal discussion contained in the Court's Memorandum Opinion of December 23, 2021 (ECF 41), which is incorporated here.

In brief, on August 30, 2017, plaintiff was traveling north on I-95 in Baltimore in a rental car when she was stopped by Warrenfeltz, a trooper with the Maryland State Police.  ECF 1 at 3; ECF 48-3 at 3-4.  Plaintiff is a Black woman and Warrenfeltz is a white man.  ECF 1 at 3; ECF 48-3 at 3-4.  Plaintiff was purportedly stopped for unlawfully using her cell phone while driving.  ECF 1 at 3; ECF 48-3 at 4.  But, plaintiff alleges that she was using the phone solely for its Global Positioning System ("GPS") function, and insists that Warrenfeltz could not have observed her handling the phone.  ECF 1 at 3; ECF 48-3 at 3-4.

During plaintiff's encounter with Warrenfeltz, he learned that there was an outstanding warrant for plaintiff's arrest.  ECF 1 at 4; ECF 48-3 at 4.  Therefore, Warrenfeltz handcuffed plaintiff and drove her to the Detention Center.  ECF 1 at 4-5; ECF 48-3 at 4-5.  After Warrenfeltz brought plaintiff to the Detention Center, he is not alleged to have had any further involvement with plaintiff.

Plaintiff claims that she was detained for at least eight or nine hours before she was allowed to use the bathroom and make a telephone call.  ECF 1 at 5; ECF 48-3 at 5.  Around this time, she was taken to see the "commissioner," who was unable to provide her with details as to the charges

---

[5] As discussed, *infra*, at this juncture I must assume the truth of the facts alleged in the suit. *See Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019).

Throughout the Memorandum Opinion, the Court cites to the electronic pagination. But, the electronic pagination does not always correspond to the page number imprinted on the particular submission.

against her, but asked if she wanted a public defender, to which she indicated that she would contact a private attorney. ECF 1 at 5; ECF 48-3 at 5-6. A few hours later, she was taken back to the commissioner, who provided her with a copy of a warrant issued by the General District Court of Arlington County, Virginia, accusing her of failing to return a rental car rented at National Airport in Arlington. ECF 1 at 5-6; ECF 48-3 at 6. Plaintiff protested that the charges were false and that she had never rented a car at National Airport or in Virginia. She also tried to contact an attorney, without success. ECF 1 at 5-6; ECF 48-3 at 6.

The following morning, plaintiff was transported to the courthouse, where she told "the judge" that she was not guilty, and the judge set her bond at $5,000. ECF 1 at 6; ECF 48-3 at 6. When she was brought back from the hearing, it was not explained to her how bail would work, but correctional officers told her that she would have to contact a bail bondsman in order to be released. ECF 1 at 6; ECF 48-3 at 6. She was shown a list of bondsmen, but alleges that when she asked to place a call to someone who could pay bail, she was told "not now," or that she would have to wait until her daily break. ECF 1 at 6; ECF 48-3 at 6. She also asserts she was told that she was to be extradited to Virginia, a process that could take up to 90 days. ECF 1 at 6; ECF 48-3 at 6. Her bail was ultimately paid on September 1, 2017, but she was not released from the Detention Center until 11:00 p.m. on September 2, 2017, 18 hours after her bail was paid. ECF 1 at 6; ECF 48-3 at 7.[6]

Records submitted with the MSP Defendants' previous motion, and considered in the Court's previous ruling, indicate that the officer who initially applied for the Virginia warrant returned all copies of the unserved warrant to the Arlington Commonwealth Attorney's Office on

---

[6] The Complaint states that plaintiff was not released until the night of September 3, 2017. ECF 1 at 6. But, plaintiff's later filings reflect that she was released on September 2, 2017. *See* ECF 28-3 at 4; ECF 37-1 at 7; ECF 48-3 at 7.

or about September 18, 2017, with a request that it be withdrawn.  ECF 28-3 at 5.  And, on October 5, 2017, the State of Maryland entered a Nolle Prosequi on the "Fugitive from Justice—VA" charge on which plaintiff was held.  ECF 28-3 at 1, 3.

I turn to the new factual allegations contained in the SAC.  Plaintiff has provided additional details as to her use of her cell phone while driving, and the position of Warrenfeltz's vehicle before he stopped her.  ECF 48-3 at 3-4.  I recount this sequence of events as plaintiff appears to allege in the SAC, drawing all reasonable inferences in plaintiff's favor.

Plaintiff was driving north on I-95 in Baltimore in a rental car, a 2017 Hyundai Santa Fe.  *Id.* at 3.  "A short time after passing through the Fort McHenry toll booth," she noticed "a four door car pull up beside her and drive parallel with her vehicle," which appeared to be "'tracking'" her.  *Id.*  She looked over at the car several times, but could not determine who was driving it because it had tinted windows.  *Id.*  However, as it "move [sic] pass her," she noticed a rear antenna, which made her assume that "it was a police officer."  *Id.*  At first, she thought the car was trying to pass her.  *Id.*

During this time, plaintiff "was driving about 60 or 65 mph."  *Id.*  She confirmed that she was not speeding, and because she was not "speeding or breaking any traffic laws," she kept driving.  *Id.*

Also at this time, plaintiff's cell phone was "in the passenger seat" next to her because she was "using the GPS for directions."  *Id.*  "Using her left forefinger and thumb, [plaintiff] picked up" one "Sony earbud," which she describes as "about the size of a peanut or small breath mint," "from her lap."  *Id.*  She "quickly glanced" to see if it was the left or right earbud, and then "placed the earbud in her ear."  *Id.*  She kept driving at the same speed, and was "not on a call on her cell."  *Id.*  According to the SAC, "[b]y this time the car had moved behind her."  *Id.* at 4.  The SAC is

unclear as to precisely when in this sequence of events the car moved behind her, but in the MSP Motion Opposition, plaintiff states, EF 56 at 2: "The Trooper could have only observed the plaintiff with a Sony ear bud in her left hand as she admitted in the first complaint." In other words, the car appears to have been parallel with plaintiff at least while she was picking up the earbud.

Plaintiff "quickly moved her cell phone" from the passenger seat "to her lap to attach her earbud." ECF 48-3 at 4. It is clear that the SAC alleges that, by this point, the police vehicle was behind her. *Id*. Plaintiff alleges that the officer did not "observe her handling the phone because she did not touch the phone until the officer's car was behind her." *Id*. Moreover, "[t]here was no way the officer could observe her handling or 'using' the cellphone in the front seat of the vehicle," while he was behind her, "because his view was obstructed by the cargo space of the vehicle, back and front seats, and his vehicle was about 1-2 car lengths behind her." *Id*. She states: "[I]t is impossible to view either the passenger seat or any object that would be in the driver's lap from a vehicle 1-2 car lengths behind the vehicle the plaintiff was driving." *Id*. In support of this, the SAC includes pictures of the exterior and interior of the model of car she was driving, a 2017 Hyundai Santa Fe. ECF 48-1 at 9.

After plaintiff placed the phone on her lap, she signaled a change of lanes, in order to let the car pass. ECF 48-3 at 4. However, the vehicle followed her, and then turned on its police lights to pull her over. *Id*. The factual allegations that the officer could not have seen plaintiff handle her cell phone from behind, and regarding the layout of plaintiff's car, were not included in the original suit but were added to the SAC.

Beyond this new information, the SAC appears to have added a claim under the Eighth Amendment. *Id*. at 2. As part of this claim, plaintiff alleges that she was "kept confined to a jail cell for almost 22-23 hours daily" at the Detention Center, and was let out only for an hour to make

calls or take a shower. *Id.* And, although plaintiff's bail was paid on September 1, 2017, she was not released until September 2, 2017, after having been "confined to a cell for over 18 hours." ECF 48-3 at 2. According to plaintiff, "[t]he confinement in the cell was detrimental to her physical (pre-diabetes) and mental health." *Id.* Most of these facts were already alleged in the Complaint. But, the Eighth Amendment claim premised on these facts is new.

Plaintiff has added slightly more detail as to her Fourteenth Amendment claim. *See id.* In particular, as part of this claim, she asserts, *id.*: "The correctional officers persisted in holding the plaintiff with the stated intent on extraditing her to Virginia even after she had been granted bail in a hearing. They told her that this could take up to 90 days." Again, this information was essentially alleged in the Complaint. *See* ECF 1 at 6. But, in the SAC, plaintiff explicitly asserts it as part of her Fourteenth Amendment claim. In this section, describing the behavior of the correctional officers, she also alleges that the officers acted "*under the supervision* of the Warden of the Harford County Maryland Detention Center [*i.e.*, Capasso]" (ECF 48-3 at 2) (emphasis added), whereas previously she alleged that the correctional officers, as well as Warrenfeltz, acted "*under the direction* of the Warden." ECF 1 at 2 (emphasis added).[7]

Plaintiff also alleges in the SAC that she "suffered emotional and mental distress due to the prolonged confinement" in the Detention Center. ECF 48-3 at 7. And, she corrects and clarifies certain dates related to her stay in the Detention Center. For example, she claims that she was kept in her cell between September 1 and September 2, 2017, and she was released on September 2, 2017. *Compare* ECF 1 at 6 *with* ECF 48-3 at 6-7.

---

[7] Plaintiff uses underlining to indicate which passages of the SAC are new. However, some of the underlined material in this paragraph of the SAC, relating to the Fourteenth Amendment claim, was already in the original Complaint. *See* ECF 1 at 2.

Finally, the SAC sues Warrenfeltz only in his individual capacity, whereas in the Complaint he was sued in both his individual and official capacities. *Compare* ECF 1 at 1 *with* ECF 48-3 at 1. Like the Complaint but unlike the FAC, the SAC sues Capasso only in his official capacity. *See* ECF 1 at 1; ECF 37-1 at 1; ECF 48-3 at 1. And, like the FAC, the SAC continues to name as defendants certain "Unnamed Correctional Officers." ECF 48-3 at 2.

Additional facts are included, *infra*.

## II. Motions to Dismiss

As noted, in my ruling of December 23, 2021, I granted plaintiff leave to amend her suit against Capasso, to name him in his individual capacity, and to include facts that, if proven, would establish that he was personally involved with the alleged deprivation of her constitutional rights, either in a supervisory capacity or individually. And, I also granted leave to plaintiff to amend her Complaint to allege facts that, if proven, would establish an equal protection violation as to Warrenfeltz. *See* ECF 41 at 67; ECF 42 at 1. As to these issues, the SAC is the operative pleading. Defendants have moved to dismiss the SAC regarding these claims. ECF 49; ECF 51.[8]

### A. Rule 12(b)(6)

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Nadendla v. WakeMed*, 24 F.4th 299, 304-05 (4th Cir. 2022); *ACA*

---

[8] The Capasso Motion is phrased as against the "First and Second Amended Complaints" (ECF 49 at 1), but only the SAC is the operative pleading.

The Capasso Motion is captioned, in the alternative, as a motion for summary judgment, and at one point references Fed. R. Civ. P. 56. *See* ECF 49 at 1; ECF 49-1 at 1. But, the entire argument in the Capasso Motion is premised on Fed. R. Civ. P. 12(b)(6), the only standard of review given is for Fed. R. Civ. P. 12(b)(6), and the motion does not include any material outside the pleadings. *See* ECF 49-1 at 1-4. Accordingly, to the extent the Capasso Motion is offered in the alternative, I will consider it as a motion to dismiss. *See* Fed. R. Civ. P. 12(d); *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998); *Kensington Vol. Fire Dep't, Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

*Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 211 (4th Cir. 2019); *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even assuming that the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ." (citation omitted)); *see also Nadendla*, 24 F.4th at 304-05; *Paradise Wire & Cable*, 918 F.3d at 317; *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). To be sure, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 10 (2014) (per curiam). But, mere "'naked assertions' of wrongdoing" are generally

11

insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In other words, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of relief. *Iqbal*, 556 U.S. at 678. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, "a court 'must accept as true all of the factual allegations contained in the complaint,' and must 'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (alteration in *Retfalvi*) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). However, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi*, 930 F.3d at 605 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012); *Glassman v. Arlington Cty.*, 628 F.3d 140, 146 (4th Cir. 2010). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name*

12

*v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).  But, "[m]ere recitals of a cause of action, supported only by conclusory statements, are insufficient to survive" a Rule 12(b)(6) motion.  *Morrow v. Navy Federal Credit Union*, ___ Fed. App'x ___, 2022 WL 2526676, at *2 (4th Cir. July 7, 2022).

Courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'"  *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (quoting *Edwards*, 178 F.3d at 243).  But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)."  *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan,* 553 F.3d 334, 336 (4th Cir. 2009).  Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.*'"  *Goodman,* 494 F.3d at 464 (emphasis in *Goodman*) (quoting *Forst,* 4 F.3d at 250).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'"  *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448).  *See Goines*, 822 F.3d at 166 (a court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits."); *see also Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *U.S. ex rel. Oberg v. Pa. Higher Educ.*

*Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999). The court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein[.]" *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013), *abrogated on other grounds by Reed. v. Town of Gilbert*, 576 U.S. 155, 135 S. Ct. 2218 (2015); *see Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167. Of import here, "[w]hen the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Id.* Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

A plaintiff may not cure a defect in a complaint or otherwise amend a complaint by way of opposition briefing. *See, e.g.*, *De Simone v. VSL Pharmaceuticals*, ___ F.4th ___, 2022 WL 2036293, at *7 (4th Cir. June 7, 2022) (recognizing that generally new arguments cannot be raised in a reply brief); *Henderson v. City of Roanoke*, ___ F. App'x ___, 2022 WL 704351, at *3 (4th Cir. Mar. 9, 2022) (per curiam) ("[N]o litigant is exempt from the well-established rule 'that parties cannot amend their complaints through briefing or oral advocacy.'") (quoting *So. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013)); *Glenn v. Wells Fargo Bank, N.A.*, DKC-3058, 2016 WL 3570274 at *3 (D. Md. July

1, 2016) (declining to consider declaration attached to brief opposing motion to dismiss because, among other things, it included allegations not alleged in the suit); *Zachair Ltd. v. Driggs*, 965 F. Supp. 741, 748 n. 4 (D. Md. 1997) (stating that a plaintiff "is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint"), *aff'd*, 141 F.3d 1162 (4th Cir. 1998); *Mylan Labs., Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1068 (1991) ("'[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss'") (quoting *Car Carriers, Inc.*, 745 F.2d 1101 at 1107).

As noted, plaintiff is self-represented. Thus, her pleadings are "liberally construed" and "held to less stringent standards than [those filed] by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "However, liberal construction does not absolve Plaintiff from pleading a plausible claim." *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 314 (D. Md. 2014), *aff'd*, 584 Fed. App'x 135 (4th Cir. 2014); *see also Coulibaly v. J.P. Morgan Chase Bank, N.A.*, DKC-10-3517, 2011 WL 3476994, at *6 (D. Md. Aug. 8, 2011) ("[E]ven when pro se litigants are involved, the court cannot ignore a clear failure to allege facts that support a viable claim."), *aff'd*, 526 Fed. App'x 255 (4th Cir. 2013).

Moreover, a federal court may not act as an advocate for a self-represented litigant. *See Brock v. Carroll*, 107 F.3d 241, 242-43 (4th Cir. 1996); *Weller v. Dep't of Social Servs.*, 901 F.2d 387, 391 (4th Cir. 1990). Therefore, the Court cannot "conjure up questions never squarely presented," or fashion claims for a plaintiff because he is self-represented. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986); *see also M.D. v. Sch. Bd. of City of Richmond*, 560 Fed. App'x 199, 203 n.4 (4th Cir. 2014) (rejecting self-represented plaintiff's argument that district court erred in failing to consider an Equal Protection claim, because plaintiff failed to allege it in the complaint). As the Fourth Circuit has said: "To

do so would not only strain judicial resources by requiring those courts to explore exhaustively all potential claims of a pro se plaintiff, but would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett*, 775 F.2d at 1278.

In short, "the leeway extended to a *pro se* plaintiff must be tempered to require the plaintiff to comply with the Federal Rules of Civil Procedure, including the pleading requirements of Rule 8." *Adam v. Wells Fargo Bank, N.A*., JFM-09-3287, 2010 WL 3001160, at *3 (D. Md. July 28, 2010). The Court "'cannot construct the plaintiff's legal arguments for [her].'" *Jackson v. Warning*, PJM-15-1233, 2016 WL 7228866, at *5 (D. Md. Dec. 13, 2016) (internal citations omitted).

## B. Discussion

As to the issues for which the Court granted leave to amend, the SAC does not allege new facts that support viable claims.

Regarding Capasso, plaintiff's suit is brought under 42 U.S.C. § 1983. To state a claim under § 1983, the plaintiff must allege facts that show personal fault, based upon a defendant's personal conduct. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (stating that for an individual defendant to be held liable pursuant to 42 U.S.C. § 1983, the plaintiff must affirmatively show that the official acted personally to deprive the plaintiff of his rights); *see also Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001). In other words, there is no respondeat superior liability under § 1983. *Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *see also Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017); *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004).

16

Liability of supervisory officials under § 1983 "is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (citing *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)).  With respect to a supervisory liability claim in a § 1983 action, a plaintiff must allege:

> (1) That the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to . . . the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted), *cert. denied*, 513 U.S. 813, (1994); *see also Wilcox*, 877 F.3d at 170.

In the original Complaint, plaintiff failed to allege any facts showing supervisory liability or that Capasso was otherwise personally involved in the conduct that allegedly amounted to a deprivation of plaintiff's rights.  Nor did the allegations amount to a claim that Capasso acted in furtherance of a local governmental law, policy, or custom under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978).  ECF 41 at 36-37.  Thus, plaintiff was granted leave to amend to name Capasso in his individual capacity, and to include facts that, if proven, would establish that he was personally involved with the alleged deprivation of her constitutional rights, either in a supervisory capacity or individually.  *Id*. at 67.

Despite guidance from the Court, plaintiff has not done so.  The SAC names Capasso only in his official capacity.  ECF 48-3 at 1.  But, plaintiff has not included any additional allegations relating to any actions by Capasso, whether in a personal or supervisory capacity.  At most, the SAC alleges that the Detention Center correctional officers acted "under the supervision" of

Capasso (ECF 48-3 at 2) rather than "under [his] direction."  ECF 1 at 2.  But, this is a meaningless change.

In her briefing, plaintiff argues that she should not be required to make these allegations prior to discovery, and asserts that Capasso is responsible for establishing general policies at the Detention Center.  ECF 48-1 at 7; ECF 55 at 4-5.  But, none of this obviates plaintiff's obligation to make some allegations in the SAC as to Capasso's conduct, and she has not done so.

Plaintiff was also granted leave to amend to add allegations as to her equal protection claim against Warrenfeltz.  To state a selective enforcement claim, the plaintiff must allege that she was subjected to conduct that "(1) was motivated by a discriminatory intent; and (2) had a discriminatory effect." *Johnson v. Holmes*, 782 Fed. App'x 269, 277 (4th Cir. 2019) (citing *United States v. Armstrong*, 517 U.S. 456, 465 (1996) and *Cent. Radio Co. v. Cty. of Norfolk*, 811 F.3d 625, 634-35 (4th Cir. 2016)).  In effect, "a plaintiff must show not only that similarly situated individuals were treated differently, but that there was 'clear and intentional discrimination.'" *Cent. Radio Co.*, 811 F.3d at 635 (quoting *Sylvia Dev. Corp. v. Calvert Cty., Md.*, 48 F.3d 810, 825 (4th Cir. 1995)).

In my previous ruling, I concluded that the Complaint did not adequately state a claim for selective enforcement.  ECF 41 at 55-58 (citing *Martin v. Conner,* 882 F. Supp. 2d 820 (D. Md. 2012)).  In particular, the Complaint was devoid of any facts showing that Warrenfeltz said or did anything during his encounter with plaintiff that would indicate his actions were predicated on plaintiff's race or motivated by discriminatory animus.  Nor did plaintiff allege any facts regarding Warrenfeltz's history of traffic stops, whether racially targeted or otherwise.  At bottom, plaintiff's equal protection claim boiled down to allegations that plaintiff is Black, Warrenfeltz is white,

Warrenfeltz observed Ogunsula's race before initiating the traffic stop, and Warrenfeltz ultimately did not issue a citation for the cell phone violation.  But, this was inadequate.

In the SAC, plaintiff has not added any new factual allegations as to her equal protection claim.  For example, she has not included any additional facts that might indicate discriminatory animus or motivation on the part of Warrenfeltz, whether from his encounter with plaintiff or otherwise.  Indeed, her equal protection claim in the SAC is virtually identical to her previous claim.

Plaintiff argues that the SAC's additional emphasis on the idea that Warrenfeltz could not see plaintiff handling her cell phone suffices for her equal protection claim, on the theory that this means that the only basis for him to stop her was her "race or sex."  ECF 48-1 at 3; *see id.* at 2-3. She also criticizes the idea that some allegations as to Warrenfeltz's history of traffic stops might be appropriate at the pleading stage.  *Id.* at 5-6; ECF 56 at 5.  And, the MSP Motion Opposition, but not the SAC, includes data as to general race and sex disparities in traffic stops, and an assertion (without citation) that the Maryland State Police "have a history of racial profiling."  ECF 56 at 3-4.  However, none of this addresses plaintiff's obligation to bolster her Complaint with factual allegations that support her selective enforcement claim.  Instead, her suit contains bare assertions.

The Court understands that plaintiff believes that she was targeted because of her race. But, she has made a serious accusation; mere belief is not enough on which to proceed.  It is well settled that a lawsuit is not a fishing expedition, and sufficient allegations are required to enable a party to conduct discovery.  *See, e.g.*, *Iqbal*, 556 U.S. at 678-79 ("Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."); *McGee v. Hayes*, 43 Fed. App'x 214, 217 (10th Cir. 2002) ("The district court was not required to permit plaintiff to engage in a 'fishing expedition' in the hope of supporting his claim."); *Bastin v. Fed. Nat'l*

*Mortgage Ass'n*, 104 F.3d 1392, 1396 (D.C. Cir. 1997) ("The district court does not abuse its discretion when it denies a discovery request that would amount to nothing more than a fishing expedition."); *E.E.O.C. v. Harvey L. Walner & Associates*, 91 F.3d 963, 971 (7th Cir. 1996) (noting the "aphorism that discovery is not to be used as a fishing expedition"); *Anderson v. Boston Scientific Corp.*, No. 1:12-CV-00762, 2013 WL 632379, at *3 (S.D. Ohio Feb. 20, 2013) (remarking that "discovery cannot be used as a fishing expedition to uncover the facts necessary to support the causes of action presented in the complaint"); *Sovereign Bonds Exchange LLC v. Fed. Republic of Germany*, No. 10-21944-CIV, 2011 WL 13100214, at *2 (S.D. Fl. Aug. 9, 2011) ("Parties may not file insufficient complaints with the hope of receiving discovery to make them sufficient."); *Top v. Ocean Petroleum, LLC*, Civil No. 10-1042, 2010 WL 3087385, at *4 (D.N.J. Aug. 3, 2010) ("Until Plaintiff is able to allege enough facts to make a claim plausible, the Court will not impose the burdens of discovery upon Defendant.").

### C.  Conclusion

In sum, the Court's previous ruling extensively analyzed these issues, and provided clear guidance to plaintiff as to what might be necessary for her claims to survive the motion to dismiss stage.  The SAC contains virtually nothing new to support plaintiff's claims against Capasso, nor to support her equal protection claim against Warrenfeltz.  Therefore, I will grant the defendants' motions to dismiss these claims.

### II.  Motion for Reconsideration

#### A. Legal Standard

As noted, ECF 48-1 appears to seek reconsideration of the Court's ruling of December 23, 2021.  ECF 48-1 invokes Fed. R. Civ. P. 59(e), which relates to motions to alter or amend a judgment, as well as Fed. R. Civ. P. 60, which relates to relief from a judgment or order.  ECF 48-

1 at 2-3.  As the MSP Motion points out, plaintiff "is seeking to alter an interlocutory order," not a final judgment.  ECF 51-1 at 5 n.1.

An interlocutory order is one that "adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties."  Fed. R. Civ. P. 54(b).  Here, although my ruling of December 23, 2021, dismissed plaintiff's claims, it dismissed certain of these claims without prejudice and with leave to amend.  And, "dismissals without prejudice generally are not appealable [final orders] 'unless the grounds for dismissal clearly indicate that no amendment in the complaint could cure the defects in the plaintiff's case.'"  *Bing v. Brivo Systems, LLC*, 959 F.3d 605, 610 (4th Cir. 2020) (quoting *Domino Sugar Corp. v. Sugar Workers Local Union 392*, 10 F.3d 1064, 1067 (4th Cir. 1993)).

Accordingly, plaintiff's request for reconsideration is governed by Rule 54(b), which provides that an interlocutory order "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."  The Fourth Circuit has distinguished between Rule 54(b) and Rule 59(e), explaining that Rule 54(b) "involves broader flexibility" to account for new facts and arguments as the litigation unfolds.  *See Carlson v. Bos. Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017); *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514-15 (4th Cir. 2003).  However, the Fourth Circuit has admonished that "the discretion afforded by Rule 54(b) 'is not limitless,'" and the Court has "'cabined revision pursuant to Rule 54(b) by treating interlocutory rulings as law of the case.'"  *U.S. Tobacco Coop. Inc. v. Big S. Wholesale of Virginia, LLC*, 899 F.3d 236, 256 (4th Cir. 2018) (quoting *Carlson*, 856 F.3d at 325).

The law of the case doctrine "generally provides that 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'"  *Musacchio v. United States*, 557 U.S. 237, 244-45 (2016) (quoting *Pepper v. United States*,

562 U.S. 476, 506 (2011)); accord *Arizona v. California*, 460 U.S. 605, 618 (1983); *Graves v. Lioi*, 930 F.3d 307, 318 (4th Cir. 2019); *Carlson*, 856 F.3d at 325; *TFWS, Inc. v. Franchot*, 572 F.3d 186, 191 (4th Cir. 2009). The doctrine's effect is to bar a party from resurrecting issues that were previously decided or "'decided by necessary implication.'" *United States v. Lentz*, 524 F.3d 501, 528 (4th Cir. 2008) (quoting *Sejman v. Warner-Lambert Co., Inc.*, 845 F.2d 66, 69 (4th Cir. 1988)). Thus, the law of the case doctrine advances the interests of efficiency, judicial economy, and finality. *See Christianson v. Colt Indus. Oper. Corp.*, 486 U.S. 800, 816 (1988) (observing that the doctrine safeguards the "efficiency of the judicial process by protecting against the agitation of settled issues"); *United States v. Philip Morris USA Inc*., 801 F.3d 250, 257 (D.C. Cir. 2015) (noting that the law of the case "reflects the understanding that 'inconsistency is the antithesis of the rule of law'") (citation and alteration omitted).

When applied to a court's interlocutory rulings, the law of the case doctrine "is not an 'inexorable command' but rather a prudent judicial response to the public policy favoring an end to litigation." *Sejman*, 845 F.2d at 68 (citation omitted).  Accordingly, the Fourth Circuit has instructed that a court should revise an interlocutory order only to account for "'(1) a subsequent trial producing substantially different evidence; (2) a change in applicable law; or (3) clear error causing manifest injustice.'" *Tobacco Coop*., 899 F.3d at 256 (quoting *Carlson*, 856 F.3d at 325).

The first of these bases "account[s] for potentially different evidence discovered during litigation." *U.S. Tobacco Coop*., 899 F.3d at 256 (quoting *Carlson*, 856 F.3d at 325).  By its terms, however, this ground refers to evidence discovered *during* litigation, not simply to material that a party could have offered initially but chose not to present.  *See Carlson*, 856 F.3d at 326 (affirming denial of motion for reconsideration of summary judgment when testimony cited by movant was available well before summary judgment briefing).  In other words, "'a party who fails to present

his strongest case in the first instance generally has no right to raise new theories or arguments in a motion to reconsider.'"   *United States v. Duke Energy Corp.*, 218 F.R.D. 468, 474 (E.D.N.C. 2003) (quoting *Fidelity State Bank, Garden City, Kan. v. Oles*, 130 B.R. 578, 581 (D. Kan. 1991)) (alteration mine).

The Fourth Circuit has colorfully explained how difficult it is to meet the third basis for reconsideration.  It has said: "As we have noted on more than one occasion, '[a] prior decision does not qualify for th[e] third exception by being just maybe or probably wrong; it must strike us as wrong with the force of a five-week-old, unrefrigerated dead fish. It must be dead wrong.'"   *U.S. Tobacco Coop.*, 899 F.3d at 258 (quoting *TFWS, Inc.*, 572 F.3d at 194) (alterations in *U.S. Tobacco Coop.*).   In other words, "[a] motion for reconsideration is 'not the proper place to relitigate a case after the court has ruled against a party, as mere disagreement with a court's rulings will not support granting such a request.'"   *Lynn v. Monarch Recovery*, 953 F. Supp. 2d 612, 620 (D. Md. 2013) (quoting *Sanders v. Prince George's Pub. Sch. Sys.*, RWT-08-501, 2011 WL 4443441, at *1 (D. Md. Sept. 21, 2011)).

## B.  Discussion

Even under the somewhat more lenient standard of Rule 54(b), plaintiff does not present adequate grounds for the reconsideration of the Court's prior ruling.

ECF 48-1 takes issue with numerous aspects of my prior decision.  Much of ECF 48-1 consists of arguments that plaintiff made, or could have made, during the briefing on defendants' previous motions to dismiss.  But, as noted, "'mere disagreement with a court's rulings will not support granting'" a motion for reconsideration.  *Lynn*, 953 F. Supp. 2d at 620 (quoting *Sanders*, 2011 WL 4443441, at *1).  Again, "'a party who fails to present his strongest case in the first

instance generally has no right to raise new theories or arguments in a motion to reconsider.'" *Duke Energy Corp.*, 218 F.R.D. at 474 (quoting *Fidelity State Bank*, 130 B.R. at 581).

The most consistent argument made by plaintiff in ECF 48-1 is that, in its prior ruling, the Court asked too much of plaintiff at the Rule 12(b)(6) stage, requiring her to allege facts she could not obtain until after discovery.  ECF 48-1 at 2-7.  Furthermore, plaintiff accuses the Court of disregarding its obligation to accept the facts alleged in her Complaint as true.  *Id*. at 2, 4.  I disagree.

To be sure, at the Rule 12(b)(6) stage, the Court must accept as true all factual allegations in a complaint, and draw all reasonable inferences from those facts in favor of the plaintiff. *Retfalvi*, 930 F.3d at 605.  But, even at the Rule 12(b)(6) stage, and even without the benefit of discovery, a plaintiff is required to allege facts sufficient to "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.   The cases cited above, *see supra*, make this clear. Moreover, the court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts. Inc. v. J.D. Assoc. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure, § 1357 (2d 3d. 1990)).   And, in the discrimination context, mere conclusory or speculative allegations are insufficient.  *See, e.g.*, *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585-86 (4th Cir. 2015) (plaintiff failed to state Title VII racial discrimination claim when conclusory allegations were consistent with discrimination, but did not support a reasonable inference of bias); *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190-91 (4th Cir. 2010) (plaintiff failed to state Title VII racial discrimination claim with speculative, conclusory allegations that did not establish the plausibility of his claim), *aff'd on other grounds*, 556 U.S. 30 (2012).

The Court's Memorandum Opinion of December 23, 2021 (ECF 41) analyzed plaintiff's claims in considerable detail.  Applying the Rule 54(b) standard, plaintiff has not shown that any part of my previous ruling warrants revision.

### III. Motion to Amend

ECF 48 is styled as a motion under Fed. R. Civ. P. 15 for leave to file an Amended Complaint, namely the SAC.  ECF 48 at 2.  Of course, as to those issues where the Court granted plaintiff leave to amend, no such motion is necessary.  For these issues, the SAC automatically became the operative pleading.  However, many of the new factual allegations in the SAC go beyond the Court's leave to amend.  For these amendments, further authorization from the Court is required.  Therefore, I construe ECF 48 to seek leave to file an Amended Complaint as to those issues for which the Court did not already grant leave to amend.

### A. Rule 15(a)(2)

Plaintiff's motion for leave to amend is governed by Fed. R. Civ. P. 15(a)(2).  This rule applies even though the Court previously dismissed the claims at issue with prejudice.  Indeed, the Fourth Circuit has made clear that a district court should evaluate even a "postjudgment motion to amend the complaint 'under the same legal standard as a similar motion filed before judgment was entered,'" *i.e.*, Rule 15(a)(2).  *Katyle v. Penn. Nat. Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011) (quoting *Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006)); accord *United States v. Shabazz*, 509 Fed. App'x 265, 266-67 (4th Cir. 2013); *Hart v. Hanover Cty. School Bd.*, 495 Fed. App'x 314, 315-16 (4th Cir. 2012); *Daulatzai v. Maryland*, ___ F. Supp. 3d ___, 2022 WL 2078284, at *4-5 (D. Md. June 9, 2022); *AdvanFort Co. v. Int'l Registries, Inc.*, No. 15-cv-220, 2015 WL

4254988, at *4 (E.D. Va. July 13, 2015).[9]  It would be incongruous to subject plaintiff to a higher standard for amendment prior to final judgment.

Under Rule 15(a), a complaint may be amended "once as a matter of course" within twenty-one days of service of a defendant's answer or motion under Fed. R. Civ. P. 12(b), (e), or (f), "whichever is earlier."  Fed. R. Civ. P. 15(a)(1)(b).  "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).

In general, leave to amend should be "freely given when justice so requires." Fed. R. Civ. P. 15(a)(2).  "Rule 15(a) grants the district court broad discretion concerning motions to amend pleadings, and leave should be granted absent some reason 'such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment or futility of the amendment.'" *Booth v. Maryland*, 337 Fed. App'x 301, 312 (4th Cir. 2009) (per curiam) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also, e.g.*, *Laber*, 438 F.3d at 427.  "Delay alone, however, is an insufficient reason to deny the plaintiff's motion to amend. . . . For this reason, a district court may not deny such a motion simply because it has entered judgment against the plaintiff." *Id*.

As mentioned, leave to amend may be denied if the proposed claim would be futile.  Under Rule 15(a), a "proposed amendment is futile when it is 'clearly insufficient or frivolous on its face.'"  *Save Our Sound OBX, Inc. v. N.C. Dep't of Transp.*, 914 F.3d 213, 228 (4th Cir. 2019)

---

[9] "[A] district court may not grant a post-judgment motion to amend the complaint unless the court first vacates its judgment pursuant to Fed. R. Civ. P. 59(e) or 60(b).[ ] To determine whether vacatur is warranted, however, the court need not concern itself with either of those rules' legal standards. The court need only ask whether the amendment should be granted, just as it would on a prejudgment motion to amend pursuant to Fed. R. Civ. P. 15(a)." *Katyle*, 637 F.3d at 470-71.

(quoting *Johnson v. Orowheat Foods*, 785 F.2d 502, 510 (4th Cir. 1986)).  A proposed amendment is also futile if it would add a new claim that fails to state a claim upon which relief could be granted, and thus would not survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  *See Save Our Sound OBX*, 914 F.3d at 228; *Davison v. Randall*, 912 F.3d 666, 690 (4th Cir. 2019); *see also Martin v. Duffy*, 858 F.3d 239, 247-48 (4th Cir. 2017) (affirming denial of leave to amend on futility grounds where the plaintiff's "pleading deficiency cannot be cured by amendment of his complaint"), *cert. denied*, ___ U.S. ___ 138 S. Ct. 738 (2018); *U.S. Airline Pilots Ass'n v. Awappa, LLC*, 615 F. 3d 312, 320 (4th Cir. 2010) (stating that a court need not grant leave to amend where the amendment would have "no impact on the outcome of the motion to dismiss").

But, the review for futility "is not equivalent to an evaluation of the underlying merits of the case.  To the contrary, '[u]nless a proposed amendment may clearly be seen to be futile because of substantive or procedural considerations . . . conjecture about the merits of litigation should not enter into the decision whether to allow amendment.'"   *Next Generation Grp., LLC v. Sylvan Learning Ctrs., LLC*, CCB-11-0986, 2012 WL 37397, at *3 (D. Md. Jan. 5, 2012) (quoting *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980)).

## B. Discussion

The MSP Motion argues that plaintiff's proposed amendments are futile.  ECF 51-1 at 8.  With one exception, I agree.

As recounted above, most of the changes in the SAC are modest, or amount to a reshuffling of plaintiff's existing factual allegations.  With the exception of the additional allegations related to plaintiff's reasonable suspicion claim, which I discuss below, the changes would have no impact on whether the SAC states a viable claim, nor would they alter the conclusions in the Court's

27

previous ruling.  As a result, except for the reasonable suspicion claim, the proposed amendments would be futile.

Plaintiff attempts to assert a new Eighth Amendment claim relating to her conditions of confinement at the Detention Center, namely that she was "kept confined to a jail cell for almost 22-23 hours daily;" only allowed out of her cell for one hour to "make phone calls or take a shower" and was held for 18 hours even after paying bail.  ECF 48-3 at 2.  Plaintiff alleges that this confinement was detrimental to her physical and mental health.  *Id*.

As an initial matter, plaintiff's claim is properly brought under the Due Process Clause of the Fourteenth Amendment, not the Eighth Amendment, because she was a pretrial detainee rather than a convicted prisoner.  *See Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001); *Young v. City of Mt. Ranier*, 238 F.3d 567, 575 (4th Cir. 2001); *Hill v. Nicodemus*, 979 F.2d 987, 991-92 (4th Cir. 1992).  But, pretrial detainees "possess at least the same rights as convicted prisoners." *Williamson v. Stirling*, 912 F.3d 154, 177 (4th Cir. 2018); *see also Bell v. Wolfish*, 441 U.S. 520, 545 (1979); *Hill*, 979 F.2d at 991.

In any case, plaintiff's conditions of confinement claim is futile for the same reason that many of her claims related to the Detention Center are not viable.  As noted, to state a claim against an individual defendant under § 1983, as plaintiff is attempting to do, she must allege facts that show personal fault, based upon a defendant's personal conduct.  *See, e.g.*, *Trulock*, 275 F.3d at 402; *Vinnedge*, 550 F.2d at 928.  But, the SAC is devoid of any allegations as to personal conduct by any named defendant related to plaintiff's conditions of confinement claim.  Nor does the SAC contain any real allegations as to any conduct by Capasso, as Warden of the Detention Center, related to plaintiff's conditions of confinement, or that might suggest some sort of supervisory

liability on the part of Capasso for his subordinates' alleged misconduct.  *See* ECF 41 at 36-37 (discussing this issue).

Plaintiff appears to maintain that the "Unnamed Correctional Officers" she proposes to add as defendants are implicated in her conditions of confinement claim.  ECF 48-3 at 2.  However, I explained in my ruling of December 23, 2021, why it would be futile to permit plaintiff to amend her Complaint to join such unnamed defendants.  *See* ECF 41 at 64-66.  Plaintiff has done nothing to address the deficiencies identified in my previous ruling with respect to her attempt to join the unnamed correctional officers.

As with many of plaintiff's other claims, plaintiff argues that it is unfair to require her to allege crucial facts prior to discovery.  ECF 48-1 at 7; ECF 55 at 3-5.  But, as I have said, and as the cases cited earlier reflect, plaintiff has an obligation in her Complaint to allege facts necessary to state a claim.  Litigation is serious business.  Lives are affected.  Plaintiff cannot simply speculate that she may have a claim, and use the courts to engage in a fishing expedition so as to pursue her theory.

However, I take a different view of the new allegations in the SAC related to plaintiff's traffic stop on August 30, 2017.  Proceeding under § 1983, plaintiff alleges that Warrenfeltz violated the Fourth Amendment by stopping her "without an individualized reasonable suspicion that she had or was in the process of committing a traffic violation or crime."  ECF 48-3 at 2.  I am satisfied that the allegations, construed in plaintiff's favor, are sufficient to permit plaintiff to amend her Complaint regarding her reasonable suspicion claim under the Fourth Amendment.

In my ruling of December 23, 2021, when I analyzed plaintiff's reasonable suspicion claim, as originally alleged, I noted that plaintiff admitted that she handled her cell phone while driving.  ECF 41 at 49.  Further, I noted that plaintiff asserted in her Complaint that Warrenfeltz did not

observe her handling her phone or committing any other traffic offense.  ECF 41 at 46.  But, I concluded that the facts as alleged in the Complaint showed that Warrenfeltz was in a position to observe plaintiff handling her phone.  *Id*. at 49.  And, because Maryland law renders unlawful the handheld use of a cell phone by a driver, Warrenfeltz's observation of plaintiff's conduct provided reasonable suspicion for the traffic stop.  ECF 41 at 49-50; *see also Santos v. State*, 230 Md. App. 487, 494, 148 A.3d 117, 121 (2016) (finding that a police officer had reasonable suspicion to initiate a traffic stop where the officer observed a driver "manipulating his cell phone while driving")

In the SAC, however, plaintiff has provided additional facts to justify her claim that Warrenfeltz could not have observed her handling her cell phone.  In particular, she alleges that during the time in which Warrenfeltz's vehicle was parallel to her own, the cell phone was on the passenger seat and, at most, Warrenfeltz could have seen her holding an earbud.  ECF 48-3 at 3-4; *see also* ECF 56 at 2.  By the time plaintiff handled her cell phone, Warrenfeltz's vehicle was behind her.  ECF 48-3 at 4.  And, plaintiff alleges facts that, viewed in her favor, indicate that Warrenfeltz could not have observed her handling her cell phone by this point, because he was "1-2 car lengths" behind her, and his view of what she was doing was obstructed by the cargo space and front and back seats of her vehicle.  Thus, plaintiff asserts that it was impossible for Warrenfeltz to view "either the passenger seat or any object" in the driver's lap.  *Id*.  To buttress this allegation, plaintiff has included photos of the model of car that she was driving during the incident.  *See* ECF 48-1 at 9.

Defendants focus solely on futility.  *See* ECF 51-1 at 8.  Considering the alleged facts, I cannot say that plaintiff's reasonable suspicion claim against Warrenfeltz, as alleged in the SAC, would be futile.

I am also mindful that plaintiff is self-represented, and that the SAC is the first opportunity plaintiff has had to amend her Complaint following the Court's analysis.  Furthermore, there is no suggestion of bad faith on the part of plaintiff.  Accordingly, I shall allow plaintiff to amend her Complaint to revive her reasonable suspicion claim against Warrenfeltz.[10]

As the MSP Defendants acknowledge (ECF 51-1 at 8), the standard for whether an amendment is futile is the same as the standard for whether an amendment states a claim under Fed. R. Civ. P. 12(b)(6).  *See, e.g.*, *Save Our Sound OBX*, 914 F.3d at 228.  Thus, my conclusion that plaintiff's amendment as to her reasonable suspicion claim would not be futile is equivalent to a ruling on a Rule 12(b)(6) motion to dismiss.  Because defendants argued only futility,

---

[10] Warrenfeltz is the only defendant directly implicated in the SAC's reasonable suspicion claim, but the SAC also contains a request for damages against Jones "if it is shown that the policies of the MSP contributed to the reasons for the unlawful traffic stop." ECF 48-3 at 7. In addition, the SAC requests injunctive relief that could be construed as related to plaintiff's reasonable suspicion claim, although it appears to have more to do with her equal protection claim. *See* ECF 48-3 at 7 (seeking an order requiring all MSP officers to undergo annual diversity and racial profiling training). For the same reasons that I gave in my prior ruling, the SAC's claims for damages against MSP and Jones, who is only sued in his official capacity, are subject to dismissal on sovereign immunity grounds. *See* ECF 41 at 27-33.

Under *Ex parte Young*, 209 U.S. 123 (1908), sovereign immunity does not extend to a request for prospective injunctive relief to correct an ongoing violation of law.  However, to avoid the bar to suit on this basis, the complaint must be lodged against a state official, and it must "alleg[e] an ongoing violation of federal law and see[k] relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002); *see also Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989).

In my ruling of December 23, 2021, I denied plaintiff's request for injunctive relief because plaintiff failed to plead facts showing a constitutional violation. See ECF 41 at 33, 59-60. Allowing plaintiff to revive her reasonable suspicion claim raises the question of whether plaintiff should also be permitted to revive Jones as a defendant in the SAC, given her request for injunctive relief. However, this would be futile, because the SAC does not allege an "ongoing violation of federal law" with respect to plaintiff's reasonable suspicion claim. *Verizon Md., Inc.*, 535 U.S. at 645. Therefore, the SAC provides no basis to overcome Jones's sovereign immunity, and Warrenfeltz is the sole defendant against whom plaintiff may assert her reasonable suspicion claim.

Warrenfeltz shall answer.[11]   In his answer, Warrenfeltz is entitled to assert his defenses, which may be considered at a later time.

### IV.  Conclusion

For the reasons stated above, I shall deny plaintiff's motion for reconsideration, contained in ECF 48-1.  And, I shall grant the Capasso Motion.  Moreover, I shall grant plaintiff's motion for leave to amend by way of the SAC, in part.  In particular, plaintiff will be permitted to revive her reasonable suspicion claim against Warrenfeltz, as contained in the SAC.  And, I shall grant the MSP Motion, except as to plaintiff's reasonable suspicion claim against Warrenfeltz.

Accordingly, the SAC is now the operative pleading in this case.  The sole claim that plaintiff may advance is her Fourth Amendment reasonable suspicion claim against Warrenfeltz.  Warrenfeltz shall answer the SAC, solely as to the reasonable suspicion claim, due within 21 days of the docketing of this Memorandum Opinion and accompanying Order.

An Order follows, consistent with this Memorandum Opinion.


Date:   August 11, 2022                                  /s/
                                                Ellen L. Hollander
                                                United States District Judge


---

[11] I do not reach any conclusion as to the merits of the claim. *See Next Generation Grp., LLC*, 202 WL 37397, at *3 (remarking that the review for futility "is not equivalent to an evaluation of the underlying merits of the case").