IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

VERONICA W. OGUNSULA,

    *Plaintiff*,

    v.                            Civil Action No. ELH-20-2568

MICHAEL WARRENFELTZ,

    *Defendant*.

**AMENDED MEMORANDUM OPINION**[1]

The self-represented plaintiff, Veronica Ogunsula, has filed a civil rights suit against Trooper First Class Michael Warrenfeltz, a Maryland State Police ("MSP") officer.  ECF 60 ("Second Amended Complaint").  Plaintiff claims that the defendant violated her Fourth Amendment rights by conducting a traffic stop without reasonable suspicion that plaintiff had committed a traffic violation.  *Id.*[2]

The Court has issued several Scheduling Orders.  *See* ECF 62; ECF 70; ECF 77; ECF 87; ECF 89; ECF 90.  Under the initial Scheduling Order, entered on September 7, 2022 (ECF 62),

---

[1] In reliance on the Clerk's docket entry, the prior Memorandum Opinion (ECF 110) states that plaintiff filed her submission at ECF 108 on January 9, 2024.  However, the Clerk subsequently corrected the date to reflect that the filing was made on January 8, 2024. Therefore, this Amended Memorandum Opinion corrects the date on which plaintiff filed the submission at ECF 108.  It also adds a footnote on page 30, explaining in what sense the Court considered plaintiff's submission on January 8, 2024 (ECF 108) belated.  The Order of January 19, 2024 (ECF 111) is unchanged.

[2] Initially, in addition to Warrenfeltz, plaintiff sued the Maryland State Police; Colonel Woodrow Jones, III, Superintendent of the MSP; and Michael Capasso, Warden of the Harford County Detention Center.  *See* ECF 1.  Warrenfeltz is the only remaining defendant.

discovery was to close on February 17, 2023.  *Id.* at 3.  However, five extensions to the deadline followed.  *See* ECF 68; ECF 69; ECF 70; ECF 76; ECF 77; ECF 85; ECF 87; ECF 89; ECF 90.

Discovery finally closed on September 9, 2023.  ECF 90.  Thereafter, on September 22, 2023, defendant filed an "Amended Motion for Sanctions" (ECF 92) ("Sanctions Motion" or "Motion"), claiming that plaintiff had substantially failed to respond to written discovery requests served on March 31, 2023.  *Id.* at 3.

I referred the Sanctions Motion to Magistrate Judge A. David Copperthite for resolution. ECF 97.  Judge Copperthite held a hearing on November 29, 2023.  ECF 101. And, on November 30, 2023, he issued a "Report and Recommendation," recommending that the Court grant the Motion and dismiss the case with prejudice, and assessing costs of $420 to the plaintiff.  ECF 104 ("R and R" or "Recommendation").[3]  Plaintiff has objected to the R and R.  ECF 105 ("Objection").

Thereafter, on December 14, 2023, I issued an Order directing defendant to file, by January 8, 2024, the following: (1) copies of the discovery requests to which plaintiff, in defendant's view, failed to respond or responded inadequately; and (2) any responses by plaintiff to these requests. ECF 106.  I also directed plaintiff to file, by the same date, any documents that, in plaintiff's view, establish the adequacy of her responses.  *Id.*

Defendant responded to this directive on January 4, 2024 (ECF 107), and plaintiff responded on January 8, 2024.  ECF 108.  Plaintiff filed a supplemental response on January 12, 2024, which includes a table listing the docket numbers of the documents she claims to have provided in response to defendant's discovery requests.  ECF 109.

---

[3] No transcript of this hearing has been generated.  However, an audio recording of the hearing is available.

No hearing is necessary to resolve the Motion.  *See* Local Rule 105.6.  As explained below, plaintiff's discovery responses are inadequate, and her continued evasion of discovery responsibilities is unacceptable.  Nonetheless, mindful that plaintiff is self-represented and has to this point not been subject to a discovery order entered by the Court, I shall afford her a final opportunity to provide adequate responses to defendant's written discovery requests.

Therefore, I shall deny the Motion, in part.  In particular, I decline to order the sanction of dismissal, as recommended by Judge Copperthite.  However, I shall award costs of $412.18 to defendant, which is the amount defendant had to pay a court reporter after plaintiff canceled her deposition on July 12, 2023, one hour before the deposition was scheduled to begin.  *See* ECF 107 at 2–3.

Plaintiff is cautioned that failure to comply with the accompanying Order will likely result in the dismissal of her case, with prejudice.

## I.    Background

The Second Amended Complaint (ECF 60) is the operative Complaint.  In two prior opinions, I discussed in detail the factual and procedural background of the case.  ECF 41; ECF 58.   I need not recount the factual and procedural background at length here, because it is not directly relevant to the Motion.  Instead, I shall incorporate by reference the procedural and factual summaries set forth in my prior opinions.  *See* ECF 41 at 1-12; ECF 58 at 1-10.  But, I will include a brief review of certain relevant factual allegations in order to frame the parties' discovery disputes.

## A.

On August 30, 2017, plaintiff, "an African American woman," was traveling northbound on Interstate 95 in Baltimore.  ECF 60 at 3.  Soon after plaintiff passed the Fort McHenry toll

booth, she noticed a "car pull up beside her and drive parallel with her vehicle." *Id.* Plaintiff was not speeding. *Id.* As the vehicle passed plaintiff, she noticed that it was mounted with "a rear antenna." *Id.* Plaintiff "assumed [that the driver] was a police officer." *Id.* However, "[b]ecause she was not speeding or breaking any traffic laws, she kept driving toward her destination." *Id.*

At some point, plaintiff "picked up [one] Sony earbud . . . from her lap." *Id.* After "[s]he quickly glanced to see if it was the left or the right earbud . . . [s]he placed the earbud in her ear." *Id.* "She was not on a call on her cell" phone, which "was in the passenger seat." *Id.* However, plaintiff was using her cell phone as a "GPS for directions to" her destination. *Id.*

Defendant, who was driving the police vehicle, "moved behind" plaintiff, and she "quickly moved her cell phone to her lap to attach her earbud." *Id.* at 4. Shortly thereafter, defendant turned on his police lights. *Id.* Plaintiff "pulled over and stopped [her] car." *Id.* After defendant obtained plaintiff's license and registration, he discovered that there was an outstanding warrant for plaintiff's arrest, for having failed to return a rental car that she was driving. *Id.* Defendant "handcuffed [plaintiff] in front of his car causing [plaintiff] humiliation." *Id.*

Plaintiff was then "taken to the Harford County Police and Detention Center in Harford, Maryland," where she was "place[d] in a cell with a cement bench and a toilet with several other people for several hours." *Id.* at 5. After about twelve hours in detention, plaintiff was provided "a copy of the warrant stating that she had rented a car at National Airport in Arlington," Virginia. *Id.* at 6. She attempted unsuccessfully to contact a "private attorney" and spent the night in detention. *Id.*

At a preliminary hearing held on August 31, 2017, plaintiff "represented herself" and pleaded not guilty to the charge against her. *Id.* The judge set plaintiff's bond at $5,000. *Id.* On September 1, 2020, plaintiff posted her bond. *Id.* at 7. She was released from detention on

September 2, 2017, at some point after 11 p.m.  *Id.*  Between September 1 and September 2, 2017, plaintiff had been confined to her cell for more than 18 hours.  *Id.*  Plaintiff allegedly suffered emotional and mental distress because of her prolonged confinement.  *Id.*

As noted, plaintiff claims that defendant initiated the traffic stop without reasonable suspicion that plaintiff had committed or was committing a crime, in violation of the Fourth Amendment.  *Id.* at 2.  She seeks "damages for emotional and economic harm[,] to include . . . [a]n award of compensatory damages against TFC Warrenfeltz," "[a]n award of punitive damages against . . . TFC Warrenfeltz," and "[a]n order of Plaintiff's costs and reasonable attorneys' fees." *Id.* at 7.[4]

**B.**

Plaintiff filed the Second Amended Complaint on August 11, 2022.  ECF 60.  Defendant answered the suit on September 1, 2022.  ECF 61.  Thereafter, on September 7, 2022, the Court entered a Scheduling Order, which provided, in part:  "All discovery, including as to experts, if any, shall be completed by **February 17, 2023**."  ECF 62 at 3 (emphasis in original).  In a joint status report filed on October 5, 2022 (ECF 67), plaintiff requested that the deadline be extended from February 17, 2023, to February 24, 2023.  Defendant did not object to the modification.  *Id.* I granted plaintiff's request.  ECF 68.

On February 16, 2023, defendant moved to modify the Scheduling Order.  ECF 69.  As grounds for the modification, defendant stated, *id.* ¶¶ 2–3:

> Defendants contacted the *pro se* Plaintiff on February 6, 2023 to schedule Plaintiff's deposition.  Receiving no response, Defendants contacted Plaintiff again on February 8, 2023 and suggested a deposition date of Thursday, February 16, but made it clear Plaintiff could pick a more convenient time or could do the deposition remotely.  Defendants sent a deposition notice to Plaintiffs that day for Thursday, February 16, 2023.

---

[4] As noted, plaintiff has no attorney in this case.

5

On February 10, 2023, Plaintiff responded to Defendants for the first time and indicated that she was unavailable for deposition on February 16 or 17th. She did not provide any dates or times when she was available. She further indicated she would provide further information no later than Tuesday (February 14th). Defendants, however, have received no further communications from Plaintiff.[5]

Defendant also stated that plaintiff had served interrogatories on defendant on January 24, 2023. *Id.* ¶ 4. Defendant asserted that, because of plaintiff's late service of the interrogatories, the 30-day period to respond afforded by Fed. R. Civ. P. 33(b)(2) would expire after the then-existing discovery deadline, which defendant understood to be February 17, 2023. *Id.* ¶¶ 1, 4.[6] Therefore, defendant asked the Court to set a discovery deadline of May 17, 2023, to allow for the deposition of plaintiff and the service of defendant's interrogatory responses. *Id.* ¶ 8.

By Order of March 3, 2023 (ECF 70), I granted defendant's motion to modify the Scheduling Order. I set May 17, 2023, as the new discovery deadline. *Id.*

In a Memorandum of April 10, 2023 (ECF 71), I directed the parties to file a status report, joint if possible, due by April 28, 2023. Among other things, I invited the parties to raise any "matter(s) [they] wish to bring to the Court's attention." *Id.* Defendant filed a status report on

_____

[5] Although defendant refers here to "Defendants" and, in one instance, to "Plaintiffs," the suit at the time of defendant's motion to modify the scheduling order (ECF 69) contained a single plaintiff and a single defendant.

[6] In her Objection (ECF 105), plaintiff "requests that the Court formally clarify the confusion surrounding the February 17, 2023 Discovery deadline listed in the Court's 9-7-22 Scheduling Order [ECF 62]. . . and the 'Approved' 10-6-22 Joint Status Report [ECF 68] . . . where a change was requested to the Discovery deadline from February 17, 2023 to February 24, 2023." ECF 105 at 2.

As far as the Court can discern, the "confusion" to which plaintiff refers arose because, in defendant's request of February 16, 2023, to extend the discovery deadline until May 17, 2023 (ECF 69), defendant stated incorrectly, *id.* ¶ 1: "The Current [sic] discovery deadline is February 17, 2023." In fact, at the request of plaintiff, the Court had extended the deadline to February 24, 2023, by Order of October 6, 2022. ECF 68. This "confusion," such as it is, is not material to the analysis of the Sanctions Motion.

April 28, 2023.  ECF 72.  There, he stated that, after "several attempts over several weeks to communicate with Plaintiff . . . regarding the filing of a Joint Status Report," plaintiff "responded on April 27, 2023 at 7 p.m. that she wanted to file a separate Status Report." *Id.* ¶ 1.  In addition, defendant stated, *id.* ¶ 4:  "Defendant is attempting to conduct a deposition of Plaintiff, but Plaintiff has not responded to scheduling requests.  Defendant has noted a deposition for May 9, 2023."

Plaintiff filed a separate status report on April 28, 2023 (ECF 74) and moved to seal that report.  ECF 73.  By Memorandum of May 3, 2023 (ECF 75), I directed plaintiff to file, by May 26, 2023, an explanation for her request to seal the entire Status Report.  *Id.* at 2.

On May 15, 2023, two days before discovery was set to close, plaintiff filed a "Motion to Extend Discovery Requiring a Modification of the Scheduling Order."  ECF 76 ("First Motion").  She asked the Court to set a new discovery deadline of August 18, 2023.  *Id.* at 2.  But, the First Motion did not indicate whether defendant consented to the requested extension.

In the First Motion, plaintiff stated, *id.*:

> The Plaintiff makes this request to have adequate time to respond to the Motion that is currently before the court (ECF No. 73) and to provide clarity on what the Plaintiff was requesting of the Court in the Motion. Before the expiration of this existing Discovery period, the Plaintiff would like to provide her response to the Court's Order on her Motion (ECF No. 73) and have the Court's response. This would necessitate a discovery deadline after March 26. 2023. Additionally, the Plaintiff requires additional time to carefully review and respond to the discovery requests and responses that have been made in this case. She also needs additional time to review and seek legal resources or counsel as appropriate.

By Order of May 16, 2023, I granted plaintiff's First Motion.  ECF 77.  Nonetheless, I commented, *id.* at 1–2 (emphasis added):

> The parties have had ample time to conduct and review discovery. Moreover, plaintiff has had abundant time to obtain a lawyer. She provides no basis to support a request for a three-month extension to review and respond to discovery. And, the Motion does not identify any additional discovery that plaintiff requires.

Further, the need to respond to ECF 73 by May 26, 2023, is unrelated to discovery. Indeed, plaintiff does not detail how or why her response to ECF 73 will affect discovery.

Nevertheless, the Court recognizes that plaintiff is self-represented. And, delays are inherent in communicating with plaintiff because communications are by mail, and not electronic.

Accordingly, I shall extend the deadline for discovery and the status report to June 28, 2023. I shall also extend the dispositive motions deadline to July 28, 2023. **I do not anticipate any further extensions**.

On July 28, 2023—one month after the discovery deadline established by the Order of May 16, 2023 (ECF 77)—plaintiff filed a second "Motion to Extend Discovery Requiring a Modification of the Scheduling Order." ECF 85 ("Second Motion"). Defendant did not consent to the Second Motion. *Id.* at 1.

In the Second Motion, plaintiff "request[ed] a 30 day pause in all case-related activities to attend to a personal health matter and deadlines related to current projects." *Id.* at 2. Plaintiff also asked the Court to extend the discovery deadline to October 5, 2023. *Id.* In explanation, plaintiff stated, *id.* (bullet points omitted):

Laptop Damage: On May 3, the day the Court docketed the Motion To Seal (ECF#73), Ms. Ogunsula's laptop (#1) was intentionally damaged by a liquid substance. This required a major repair and inability to access data. In June and July 2023, she suffered other PC-related incidents on a second laptop. These incidents have hindered discovery and delayed a deposition requested by the Defendant. The Plaintiff made the Defendant aware of the issue related to the PC and deposition.

Work schedule: Her professional (Consultant/Business Developer) commitments along with work/project deadlines for upcoming projects makes it impossible for her to meet the current case commitments as originally scheduled. This is especially true this year during the summer months.

Ms. Ogunsula will take the next 30 days to focus on a personal health matter.

A few days later, on August 2, 2023, defendant moved for sanctions. ECF 86 ("First Sanctions Motion"). In the First Sanctions Motion, defendant complained that plaintiff "has not made herself available for a deposition and has not responded to written discovery." *Id.* at 1.

8

Defendant's counsel described his repeated attempts, over a period of five months, to schedule and conduct plaintiff's deposition. *Id.* at 2–3. According to defendant's attorney, he "was forced to note depositions, but [plaintiff] did not confirm the dates, did not request different dates, and did not even acknowledge the dates." *Id.* at 2. Instead, "[o]n all occasions, she cancelled the deposition the day of or the day before the deposition." *Id.* In addition, defense counsel claimed that plaintiff had ignored defendant's request for written discovery, which defendant had served on plaintiff on March 31, 2023. *Id.* at 4. Defense counsel stated: "Defendant's counsel has inquired on at least three occasions inquiring about the status of [plaintiff's] discovery requests and [plaintiff] has never responded to any of these inquiries." *Id.*

By Order of August 8, 2023 (ECF 87), I extended the discovery deadline to September 8, 2023. The Order provided, in part, *id.* ¶ 1: "Discovery shall be limited solely to the deposition of plaintiff, to be completed by September 8, 2023, and to her submission of responses to interrogatories and document requests, also due by September 8, 2023." And, I deferred ruling on defendant's First Sanctions Motion until plaintiff's compliance with the Order of August 8, 2023, could be ascertained. *Id.* ¶ 2.

On September 7, 2023, plaintiff filed a "Motion to the Court Regarding Plaintiff's Deposition." ECF 89. There, plaintiff stated that, "[b]y mutual consent the parties have agreed to a deposition date . . . one day after the Court[-]ordered discovery deadline of September 8, 2023." *Id.* Therefore, plaintiff asked the Court to "extend the deadline by one day." *Id.* I granted the requested extension, to allow for the deposition of plaintiff on September 9, 2023. ECF 90. Then, by Order of September 14, 2023 (ECF 91), I directed defendant to inform the Court by September 22, 2023, whether he still wished to pursue his sanctions motion, given that plaintiff was deposed on September 9, 2023.

On September 22, 2023, defendant filed the instant Sanctions Motion.  ECF 92.[7]  There, defendant acknowledged that, because the deposition of plaintiff "did occur[,] . . . that aspect of the dispute has been resolved."  *Id.* at 2.  Nonetheless, defendant sought sanctions for plaintiff's alleged failure to respond meaningfully to defendant's written discovery requests.  *Id.*  Defendant stated, *id.* at 2–3:

> On the morning of September 22, 2023, undersigned counsel received a fax from Ms. Ogunsula purporting to be her responses to interrogatories. This information was received two weeks after the most recent extended discovery deadline and the date this Amended Motion was due. These responses provided almost no information to Defendant. The majority of responses referred to attached documents, but no additional documents were attached. Plaintiff is claiming medical issues as a result of this case and refused to provide any medical providers or records to Defendant. Additionally, Plaintiff provided no response at all to Defendant's Request for Production of Documents.
>
> Plaintiff has made it clear that she has multiple documents in her possession but she has not been provided these documents. These documents are related to both the substance of her claim and her damages. Plaintiff also referenced these documents in her deposition, but has not provided the document. The interrogatories were also not affirmed under oath. Defendant has not received anything purporting to be a response to request for the production of documents or any documents. These discovery responses were due on May 1, 2023.

As noted, I referred the Sanctions Motion to Judge Copperthite for resolution.  ECF 97. Judge Copperthite conducted a thorough a hearing on the Sanctions Motion on November 29, 2023.  ECF 101.  Thereafter, Judge Copperthite recommended that the Court grant the Sanctions Motion and dismiss the case, with prejudice.  ECF 104.

In his R and R, Judge Copperthite determined that the evidence presented at the hearing "fully supported Defendant's allegation that Plaintiff had notice of her duty to respond to the Request[s] for Production" served on March 31, 2023, "but simply chose not to do so."  *Id.* at 2.

---

[7] Although the First Sanctions Motion was accompanied by a certification of good faith as required by Fed. R. Civ. P. 37(d)(1)(B), *see* ECF 86-1, the instant Sanctions Motion did not include a certification.

Judge Copperthite noted that the extent of plaintiff's response was "a rental car receipt, a summary of dollar amounts without any actual receipts or backup documents, a partial phone call log with no further identification and a list of what kind of damages she believed she suffered, again without any backup documents." *Id.* According to Judge Copperthite, "Plaintiff made multiple excuses for her failures to responds to the [Requests for Production]," but she "admitted she did not provide any other documents." *Id.*

"With respect to the interrogatories," Judge Copperthite determined that "again Plaintiff failed to answer the questions completely or explain the critical aspects of her claim." *Id.* In particular, "Plaintiff stated she knew the names of her doctors and had documents, yet failed to identify any of that information in the answers to interrogatories." *Id.* In particular, Judge Copperthite observed: "There has been no disclosure of medical bills, reports, identification of treating doctors or any information related to [the] damages claimed by Plaintiff." *Id.* at 3.

In considering the appropriateness of imposing sanctions on plaintiff for her non-cooperation in discovery, Judge Copperthite considered the four factors identified by the Fourth Circuit in *Mut. Fed. Sav. And Loan Ass'n v. Richards & Assocs., Inc.*, 872 F.2d 88 (4th Cir. 1989): "(1) whether the noncomplying party acted in bad faith; (2) the amount of prejudice his noncompliance caused his adversary, which necessarily includes an inquiry into the materiality of the evidence he failed to produce; (3) the need for deterrence of the particular sort of noncompliance; and (4) the effectiveness of less drastic sanctions." ECF 104 at 3 (citing *Mut. Fed. Sav.*, 872 F.2d at 92).

Judge Copperthite found "that Plaintiff acted in bad faith in continuing to deny Defendant[] critical information to prepare a defense to this complaint." *Id.* at 4. In particular, Judge Copperthite considered it "undeniable that the Complaint was filed on August 31, 2020 and

continuing through the date of this hearing, Plaintiff steadfastly refused to produce documents which she claims she possessed." *Id.*

With respect to the second factor, prejudice, Judge Copperthite determined that "Plaintiff intentionally withheld documentation and testimony that would not only relate to liability on the part of TFC Warrenfeltz, but also to the entire issue of damages." *Id.* He explained, *id.*: "There was no disclosure of medical information including the identity of any treating practitioners [and] no backup documents to [substantiate] the alleged damages."

Judge Copperthite also determined that the third factor, deterrence, favored sanctions. He reasoned that "there is a strong need for deterrence of litigants who file their claim and abandon their responsibilities to the Court." *Id.* at 5.

With respect to the fourth factor, the effectiveness of less drastic sanctions, Judge Copperthite concluded that, because plaintiff has "totally den[ied] Defendant an opportunity for a fair trial, there are no effective less drastic sanctions." *Id.* Judge Copperthite explained, *id.*:

> The damage here is done. The Court cannot now impose any limits of proof upon Plaintiff at trial since no one but the Plaintiff knows what proof actually exists. To do so, would reward Plaintiff for her total failure to provide discovery in this case. There have already been several extensions of discovery. Defendant[] [was] hamstrung by not having written discovery responses before deposing Plaintiffs. Any less drastic sanctions would only give Plaintiff a "win" for creating an uneven playing field . . . . Plaintiff has had ample opportunity to cure her default in discovery but has failed to do so.

In assessing the appropriateness of imposing sanctions, Judge Copperthite was mindful of plaintiff's pro se status. *Id.* But, he correctly observed that "she is still responsible for performing all duties imposed upon counsel . . . ." *Id.* He added that the deference afforded by a court to a self-represented litigant does not permit the "failure to meet Court-imposed deadlines." *Id.* (Citation omitted).

In sum, Judge Copperthite opined: "Defendant here is left truly in the dark in defending this claim." *Id.* at 3. In Judge Copperthite's view, plaintiff's "failure to provide discovery absolutely precludes the Defendant from a fair trial." *Id.* at 4.

Plaintiff timely objected to Judge Copperthite's Recommendation. ECF 105. In her Objection, plaintiff "unequivocally" asserts that "there has been no lack of diligence" on her part. *Id.* at 1. She maintains that, despite the "historic pandemic" that occurred when this litigation began in August 2020, she submitted timely filings on all but one occasion. *Id.* at 2. She also notes that, until recently, she was not allowed to file her submissions electronically, and so had to use the mail or travel to the courthouse. *Id.*

Plaintiff has identified "three significant events [that] took place during the Discovery Period," which she claims have "negatively impacted [her] ability to respond to the Defendant's discovery request." *Id.* at 4. In particular, plaintiff asserts that her ability to participate in discovery was impaired because (1) she was not "not . . . aware of the Defendant's 'document requests' which the Magistrate Judge Copperthite's Report referred to as a Request for Production of Documents"; (2) she experienced "Catastrophic Laptop/PC Damage to her primary PC used for this case"; and (3) she has been required to attend to "[t]wo significant health matters." *Id.* Plaintiff appears to suggest that these occurrences refute Judge Copperthite's conclusion that her failure to participate in discovery was the result of bad faith. *Id.* at 4.

In the Objection, plaintiff also addressed her failure to respond to document requests and interrogatories relating to her medical records and health care history. *Id.* at 8. According to plaintiff, she did not respond to these requests because (1) she does not have relevant medical records in her physical custody; (2) she believes the interrogatory relating to her health care history is overbroad; and (3) she believes information related to her health history is privileged. *Id.* In

plaintiff's view, "Defendant is using the request for medical records as a smoke screen to get the case dismissed." *Id.*

As mentioned, to aid the Court in its evaluation of the adequacy of plaintiff's participation in discovery, I ordered defendant to file, by January 8, 2024, the following: (1) copies of the discovery requests to which plaintiff, in defendant's view, failed to respond or responded inadequately; and (2) any responses by plaintiff to these requests. ECF 106. I also directed plaintiff to file, by the same date, any documents that, in plaintiff's view, establish the adequacy of her responses. *Id.* Both plaintiff and defendant responded to this directive. ECF 107 (defendant); ECF 108 (plaintiff).

In his response, defendant reiterated that, although "Defendant tried numerous times to schedule a deposition of the Plaintiff," she "was uncooperative with these attempts, either not providing dates when requested or ignoring notices of deposition and canceling scheduled depositions with little notice." ECF 107 at 2. Specifically, defendant stated that plaintiff canceled depositions scheduled for February 16, 2023, May 9, 2023, and July 12, 2023, each time "with short notice, after ignoring the notices and email reminders." *Id.* According to defendant, plaintiff canceled "[t]he deposition on July 12 . . . only an hour before the scheduled start resulting in a $ 412.18 charge to the Defendant." *Id.* at 2–3. Although plaintiff was finally deposed on September 9, 2023, defendant conducted the deposition "without any document production or answers to interrogatories." *Id.* at 3.

On September 22, 2023—the day by which defendant was to inform the Court whether he intended to pursue his sanctions motion further—plaintiff faxed purported responses to defendant's interrogatories, which had been served on March 31, 2023. *Id.* Defendant has

provided the Court with a copy of these interrogatories and plaintiff's responses.  ECF 107-2 to ECF 107-5.

Additional facts are included, *infra.*

## II.    Legal Standards

### A.

"The Federal Magistrates Act ('FMA') allows district courts to delegate pretrial matters to a magistrate judge, who then issues a recommendation as to how to resolve those matters." *Elijah v. Dunbar*, 66 F.4th 454, 459 (4th Cir. 2023) (citing 28 U.S.C. § 636(b)(1)(A)).  However, "Magistrate judges were not intended to replace Article III judges, but to increase the efficiency of the court by providing a neutral 'preliminary evaluation' for the judge's consideration." *Dunbar*, 66 F.4th at 459 (citing *Mathews v. Weber*, 423 U.S. 261, 271 (1976)).  Therefore, "[t]he authority of magistrate judges is narrowly limited by Article III" of the Constitution, and "'ultimate decision[s]'" must "be made solely by the district court, not the magistrate." *Dunbar*, 66 F.4th at 459 (quoting *United States v. George*, 971 F.2d 1113, 1118 (4th Cir. 1992)) (additional citation omitted).  It follows that the recommendations of magistrate judges are merely proposals that hold no presumptive weight.  *See Dunbar*, 66 F.4th at 459 (citing *Mathews*, 423 U.S. at 270–71).

In response to the recommendation of a magistrate judge, "'any party may serve and file written objections' whereupon '[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.'" *Dunbar*, 66 F.4th at 459 (quoting 28 U.S.C. § 636(b)(1)(C)) (alteration in *Dunbar*); *see also Weaver v. United States Postal Service*, 2024 WL 94298, at *2 (4th Cir. Jan. 9, 2024) (per curiam); Fed. R. Civ. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to.").  "Mandatory de novo review

of litigants' objections protects the FMA's otherwise precarious position and advances Congress's intent that district judges bear primary responsibility for supervision of federal magistrates' functions." *Dunbar*, 66 F.4th at 459 (internal quotation marks and citations omitted).  As a result, "such review may only be foregone when the parties do not object to the magistrate's recommendation." *Id.* at 460 (citing *Diamond v. Colonial Life & Accident Co.*, 416 F.3d 310, 315 (4th Cir. 2005)).

Notably, a party seeking de novo review of a magistrate judge's recommendation "'must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'"  *Dunbar*, 66 F.4th at 460 (quoting *United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007)).  "'Just as a complaint stating only "I complain" states no claim, an objection stating only "I object" preserves no issue for review.'"  *Dunbar*, 66 F.4th at 460 (quoting *Lockert v. Faulkner*, 843 F.2d 1015, 1019 (7th Cir. 1988)).

"'If the grounds for objection are clear, district court judges must consider them de novo.'"  *Weaver*, 2024 WL 94298, at *2 (quoting *Dunbar*, 66 F.4th at 460).  But, "[i]f a litigant objects only generally, the district court reviews the magistrate's recommendation for clear error only."  *Dunbar*, 66 F.4th at 460 (citing *Diamond*, 416 F.3d at 315); *see also Weaver*, 2024 WL 94298, at *2.  However, "the bar for de novo review is low:  objections need only 'reasonably . . . alert the district court of the true ground for the objection.'"  *Weaver*, 2024 WL 94298, at *2 (quoting *United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007)).

As indicated, plaintiff is self-represented.  Of import here, "when reviewing pro se objections to a magistrate's recommendation, district courts must review de novo any articulated grounds to which the litigant appears to take issue."  *Dunbar*, 66 F.4th at 460–61 (citing *Martin v. Duffy*, 858 F.3d 239, 245–46 (4th Cir. 2017)).  "Such a requirement advances district courts'

obligation to liberally construe pro so objections while maintaining constitutional limitations on a magistrate's authority."  *Dunbar*, 66 F.4th at 461.

**B.**

Defendant seeks sanctions under Fed. R. Civ. P. 37(d)(1)(A)(ii).  ECF 92 at 3.  It provides, in part:  "The court where the action is pending may, on motion, order sanctions if . . . a party, after being properly served with interrogatories under Rule 33 or a request for inspection under Rule 34, fails to serve its answers, objections, or written response."  Fed. R. Civ. P. 37(d)(1)(A)(ii). "A motion for sanctions for failing to answer or respond must include a certification that the movant has in good faith conferred or attempted to confer with the party failing to act in an effort to obtain the answer or response without court action."  Fed. R. Civ. P. 37(d)(1)(B).

Possible sanctions are those listed in Fed. R. Civ. P. 37(b)(2)(A)(i)–(vi).  *See* Fed. R. Civ. P. 37(d)(3).  In particular, a court may direct that certain facts be taken as established, Fed. R. Civ. P. 37(b)(2)(A)(i); prohibit designated claims or defenses; Fed. R. Civ. P. 37(b)(2)(A)(ii); strike pleadings in whole or in part, Fed. R. Civ. P. 37(b)(2)(A)(iii); stay the case until the disobedient party's default is cured, Fed. R. Civ. P. 37(b)(2)(A)(iv); dismiss the action in whole or in part, Fed. R. Civ. P. 37(b)(2)(A)(v); or render a default judgment against the disobedient party.  Fed. R. Civ. P. 37(b)(2)(A)(vi).

In contrast to Fed. R. Civ. P. 37(b)(2), which provides for sanctions only when a party has violated "an order [of the court] to provide or permit discovery," Fed. R. Civ. P. 37(d)(1)(A) authorizes sanctions even if no court order is in place.  *See Caruccio v. Marco Techs. LLC*, JRR-22-1477, 2023 WL 3931991, at *2 (D. Md. June 9, 2023).  Therefore, unlike a motion for sanctions under Fed. R. Civ. P. 37(b), a motion for sanctions under Fed. R. Civ. P. 37(d)(1)(A) need not be preceded by a motion to compel and a subsequent court order.

The courts of appeals disagree about whether an incomplete or evasive response to written discovery—as distinguished from a total failure to respond—may provide a basis for sanctions under Fed. R. Civ. P. 37(d) or, instead, must first be addressed by a motion to compel under Fed. R. Civ. P. 37(a)(3)(B). *See Badalementi v. Dunham's Inc.*, 896 F.2d 1359, 1363 (Fed. Cir. 1990) (collecting cases). For example, in *Fox v. Studebaker-Worthington, Inc.*, 516 F.2d 989 (8th Cir. 1975), the Eighth Circuit concluded that "[t]he provisions of Rule 37(d) with regard to interrogatories do not apply when the failure to comply is anything less than a total failure to respond." *Id.* at 995 (citations omitted). Instead, "[i]f a response is made, but some questions [are] not answered or are evasive or incomplete, a motion under Rule 37(a) to compel answers is the proper remedy." *Id.* (citations omitted).

In contrast, in *Airtex Corp. v. Shelley Radiant Ceiling Co.*, 536 F.2d 145 (7th Cir. 1976), the Seventh Circuit held that a district court "was well within its discretion in awarding expenses" pursuant to Fed. R. Civ. P. 37(d) when the sanctioned party provided answers that "were evasive and incomplete and [were] framed to impede discovery rather than to facilitate it." *Id.* at 155. The Court explained, *id.*:

> It is true that [R]ule 37(d) does not specifically cover giving answers that are evasive and incomplete, as distinguished from failing to answer at all. Compare Fed. R. Civ. P. 37(a)(3). We believe, however, that when, as here, the fact that answers to interrogatories are evasive or incomplete cannot be determined until further proceedings have been conducted to obtain the information later determined to have been withheld, the evasive or incomplete answers are tantamount to no answer at all, and [R]ule 37(d) is applicable.

Authority on this question in the Fourth Circuit is inconclusive.

In *Hathcock v. Navistar Int'l Transp. Corp.*, 53 F.3d 36 (4th Cir. 1995), the Fourth Circuit stated, *id.* at 40: "Regarding a district court's potential authority under Rule 37(d) to impose a default sanction for insufficient compliance with a discovery order, rather than for a complete

failure to respond, we have upheld [in *Basch v. Westinghouse Elec. Corp.*, 777 F.2d 165, 174–75 (4th Cir. 1995)] the imposition of sanctions for a misleading answer to an interrogatory regarding the identity of a defendant's witness."  Therefore, "[b]ased on *Basch*," the Court determined that there was "support for the [proposition] that Rule 37(d) authorizes sanctions for something less egregious than total non-responsiveness."  *Hathcock*, 53 F.3d at 40. Nonetheless, the Court acknowledged competing authority suggesting "that Rule 37(d) is inapplicable in the absence of a 'serious or total failure to respond to interrogatories.'"  *Id.* (quoting 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice & Procedure § 2291).

In *Eller v. Prince George's Cnty. Public* Schools, TDC-18-3649, 2020 WL 7336730 (D. Md. Dec. 14, 2020), Magistrate Judge Sullivan acknowledged that "[t]here is some authority in the Fourth Circuit that indicates Rule 37(d) sanctions may issue against a party that provides misleading or evasive answers to discovery requests under Rule 33 and Rule 34."  *Id.* at *13 (citing *Hathcock*, 53 F.3d at 40; *Basch*, 777 F.2d at 174).  Nonetheless, Judge Sullivan appeared to endorse the rule that "[s]anctions are only available under Rule 37(d) where a party fails to serve any response to interrogatories or document production requests."  *Id.* at *13 (citing 8B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2291 (3d ed. Oct. 2020 update)).  In addition, he commented, 2020 WL 7336730, at *13 n.19:

> Even assuming that Rule 37(d) can apply when a party actually serves discovery responses, it still does not apply here. There is nothing in the record to indicate that Defendants' ultimate discovery responses are evasive or misleading like the responses at issue in *Hathcock* and *Basch*. In addition, there is no indication that Defendants acted in bad faith or attempted to gain a tactical advantage over Plaintiff by producing evasive or misleading discovery responses. If Plaintiff believed that Defendants' discovery responses were deficient, the better practice would have been to seek an order compelling discovery. This would have allowed Plaintiff to obtain the discovery she sought (if Defendants complied with the order) or meaningful sanctions (if Defendants did not).

Notably, "Rule 37(d) . . . gives the district court wide discretion to impose sanctions for a party's failure to comply with its discovery orders." *Mut. Fed. Sav.*, 872 F.2d at 92.  Therefore, "it is only for an abuse of discretion that a reviewing court may reverse the decision of the district court." *Id.* (citing *Nat'l Hockey League v. Met. Hockey Club Inc.*, 427 U.S. 639, 642 (1976)). However, "[w]hen the sanction involved is judgment by default [or dismissal], the district court's 'range of discretion is more narrow' because the district court's desire to enforce its discovery orders is confronted head-on by the party's right to a trial by jury and a fair day in court." *Mut. Fed. Sav.*, 872 F.2d at 92 (quoting *Wilson v. Volkswagen of America, Inc.*, 561 F.2d 494, 503–04 (4th Cir. 1977)).

"As [the Fourth Circuit] recognized in *Wilson*, these competing interests require the application of a four-part test: (1) whether the noncomplying acted in bad faith; (2) the amount of prejudice his noncompliance caused his adversary, which necessarily includes an inquiry into the materiality of the evidence he failed to produce; (3) the need for deterrence of the particular sort of noncompliance; and (4) the effectiveness of less drastic sanctions." *Mut. Fed. Sav.*, 872 F.2d at 92 (citing *Wilson*, 561 F.2d at 503–06).

## III.    Discussion

### A.

Defendant was finally able to depose plaintiff on September 9, 2023.  But, defendant claims that he conducted the deposition "without any document production or answers to interrogatories." ECF 107 at 3.

I begin by reviewing the contents of the parties' responses to the Order of December 14, 2023.  ECF 106.  As mentioned, that Order directed the parties to document the discovery requests

of defendant and plaintiff's responses.  Defendant's discovery requests and plaintiff's responses are docketed at ECF 107-2 to ECF 107-5.

Defendant served interrogatories and requests for document production on March 31, 2023.  ECF 107 at 2.  The submission reflects that defendant propounded 22 interrogatories and 24 requests for document production.  ECF 107-2 at 5; ECF 107-3 at 3–4.  The "Definitions" preceding the interrogatories state, in part:  "Identify, identity or identification . . . when used in reference to a document, requires you to state the date, the author . . . the addressee, and the type of document ([i].e., letter, memorandum, telegram, chart, etc.) or to attach an accurate copy of the document to your answer, appropriately labeled to correspond to the interrogatory."  ECF 107-2 at 2.

Plaintiff did not provide any response to the interrogatories until September 22, 2023, when she faxed purported responses to defendant.  ECF 107-4; ECF 107-5.  But, the interrogatory responses plaintiff provided were incomplete.  Moreover, plaintiff never responded to defendant's request for document production.  *See* ECF 107-6.

Plaintiff appears to have provided no response to interrogatories 2, 5, and 7.  *See* ECF 107-4.  Interrogatory 2 asks plaintiff to "[i]dentify each person," other than an expert, "having discoverable information that tends to a support a position" that plaintiff has taken or plans to take in the case.  ECF 107-4 at 4.  Interrogatory 5 provides, in part:  "State the substance of all discussions concerning the occurrence that you or others in your presence have had with any person (excluding discussions between you and your attorneys)."  *Id.* at 6.  Interrogatory 7 asks plaintiff to disclose, among other things, the name, address, and telephone number of any person

that plaintiff or anyone acting on plaintiff's behalf "interviewed . . . concerning the allegations against Trooper Matthew [sic] Warrenfeltz in the Complaint." *Id.*[8]

Plaintiff's responses to the remaining interrogatories are cryptic or incomplete. To illustrate, interrogatory 3 asks plaintiff to identify and provide a "brief description" of "any documents, electronically stored information, or tangible things" on which plaintiff planned "to rely . . . to support a position . . . in the action." *Id.* at 6.  ECF 107-4 at 3.

Ms. Ogunsula answered interrogatories 1, 6, 14, 15, 16, 17, and 20.  For the most part, she answered the interrogatories with some variation of "no" or "not applicable." *See id.* at 4–9.

Plaintiff responded to interrogatory 3, stating:  "Cell phone bill and records" and "Rental car documents." *Id.* at 6.  Despite the instructions concerning the meaning of "identify," she did not provide any clarification.

Interrogatory 4 asks plaintiff to identify "all documents, photographs, videotapes, or other depictions in [her] possession related to the allegations against [defendant]." *Id.*  Plaintiff responded:  "Picture of vehicle, earphones." *Id.*  Interrogatory 11 asks plaintiff to "[d]escribe all current symptoms, disabilities, and other physical or mental conditions that [she] claim[s] are a result of the occurrence." *Id.* at 7.  Plaintiff answered:  "PTSD." *Id.*  Interrogatory 12 asks plaintiff to identify each health care provider who treated her in relation to her claimed injury.  Plaintiff responded:  "Claim privilege." *Id.*

Interrogatory 18 asks plaintiff to identify "each internet-based social networking site that [she has] used during the past ten years" and, "[f]or each such site identified, include the name and address of the service provider, the name and address of the account holder, [her] user name or

---

[8] Defendant's interrogatories incorrectly refer to defendant as "Matthew" Warrenfeltz. Defendant's first name is Michael.

avatar, the URL where the account was/is available, and the dates during which [she] used the account." *Id.* at 8.  Plaintiff provided the following response, which the Court presents by way of a "screenshot," *id.*:[9]

Response:
*Facebook
*Twitter/X:
*Instagram:
*TikTok
*Pinterest
*Youtube
*Blogger.com
*LinkedIn
*Flickr

*Tumblr

Plaintiff's response to interrogatory 19 was similar.  I include that interrogatory and plaintiff's response below, *id.* at 5 (screenshot):

19.    List all email accounts that you have used during the last ten years.  For each account, include the name and address of the service provider, the name and address of the account holder, your email address, and the dates during which you used the service:

Response:
*nona.ogunsula@gmail.com
*Ogunsulav@gmail.com
*nona.ogunsula@yahoo.com
*nona@libertyinkpro.com

---

[9] A "screenshot" is "an image that shows the contents of a computer display." *Screenshot*, MERRIAM-WEBSTER, https://perma.cc/DVS7-CNEM (last visited Jan. 18, 2024). The images provided by the Court are, in effect, photographs of the cited discovery materials. The Court has added a border to the screenshots for ease of reading.

Interrogatory 21 asks plaintiff whether she has applied for any federal benefits in relation to her claimed injury.  Plaintiff wrote: "??????"  *Id.* at 9.[10]

Several related interrogatories requested information about plaintiff's claimed damages. Plaintiff's responses to these interrogatories were nonspecific and confusing.   In particular, plaintiff responded to interrogatories requesting an itemization and calculation of economic damages (interrogatory 8); a list and description of non-economic damages (interrogatory 9); and a description of any injuries sustained (interrogatory 10) by writing:  "See attached."  *Id.* at 6–7. The document that plaintiff attached states as follows, ECF 107-5 at 2 (screenshot):

**Veronica Ogunsula**
DAMAGES

| | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 | | |
|---|---|---|---|---|---|---|---|---|---|
| Compensatory Damages | 39200 | 26400 | 56320 | 72160 | 0 | 17500 | 25000 | $ | 236,580.00 |
| Compensatory Damages | | | | 20840 | 130000 | 112500 | 110000 | $ | 373,340.00 |
| | | | | | | | | | |
| Punitive Damages | 25000 | 30000 | 30000 | 30000 | 40000 | 100000 | 100000 | $ | 355,000.00 |
| Punitive Damages | 50000 | 60000 | 60000 | 60000 | 80000 | 200000 | 200000 | $ | 710,000.00 |
| | | | | | | | | | |
| Attorneys Fees | 34260 | 34920 | 43896 | 54900 | 75000 | 129000 | 130500 | $ | 502,476.00 |
| Total | | | | | | | | $ | 2,177,396.00 |
| | | | | | | | | | |
| Hotel expenses | | | | | | | | | |
| Health damages | | | | | | | | | |
| mental anguish | | | | | | | | | |
| Contract ending NIH | | | | | | | | | |

Although the document claims more than half a million dollars in attorney fees, no attorney has entered an appearance on plaintiff's behalf in this matter.  *See* Docket.   And, if plaintiff

_____

[10] This interrogatory is numbered "21" in the document that appears to have been served on plaintiff.  ECF 107-2 at 5.  But, in the document returned by plaintiff to defendant, the interrogatory is numbered "20."  ECF 107-4 at 9.

incurred legal fees in connection with her arrest in 2017, she has certainly not made that claim known.

The document also contained the following list, which purports to identify plaintiff's "Non-Economic Damages," ECF 107-5 at 3 (screenshot):

Non-Economic Damages:

- Denied car load (NIH & Bank of America)
- Rental car expenses
- Mental anguish
- Contract termination
- Health decline
- Unable to travel to visit family/friends
- PTSD
- Issue with crowds
- Denied lease

Clearly, plaintiff provided no particulars concerning these alleged damages. For example, she did not include dates or monetary amounts related to each bulleted item. Nor did she provide even a brief description of the lease that was allegedly denied, the contract that was supposedly terminated, the car loan that was denied, the dates, and how these occurrences relate to her claims.

Defendant's submission reflects that plaintiff provided additional "Discovery Files" on October 10, 2023. ECF 107-7. In particular, according to defendant, "Plaintiff emailed Counsel a confidential Google drive that contained four items: a receipt from a Thrifty car rental, a printout showing the dismissal of a Harford County court case, Harford County District Court hearing paperwork, MWAA [Metropolitan Washington Airports Authority] police report involving a stolen car warrant, and a receipt for a Thrifty car rental." ECF 107 at 4. However, defendant states that, because "these items were sent in a confidential folder, counsel cannot download or print the items, nor can they be saved and provided to the court." *Id.* Moreover, defendant notes that "the

link [to the documents] expires on January 8, 2024, at which time Defendant will no longer have access to even view these materials." *Id.* [11]

On November 29, 2023, the date of the hearing before Judge Copperthite, plaintiff emailed (ECF 107-8) two additional documents to defendant. *See* ECF 107-9; ECF 107-10. One is titled "Questions from Deposition" and is apparently intended to address outstanding questions from plaintiff's deposition. ECF 107-9. The other document appears to list items plaintiff claims she provided to defendant, such as a "Thrifty Rental Car Document dated 01/12/17" and a "Harford County Trail [sic] Summary dated 10/5/17." ECF 107-10. In this document, plaintiff asserted that defendant's claim that plaintiff had not provided documents "is false." *Id.*

Defendant contends that "the listed items that were provided by [plaintiff] do not satisfy the discovery requests by Defendant [because] they are vague and do not contain any specific information on damages." ECF 107 at 4. Moreover, according to defendant, "[t]he items that have been provided . . . are only tangentially related to this suit [because] they mostly involve the underlying warrant that resulted in her arrest." *Id.*

In her own submission (ECF 108 to ECF 108-13), plaintiff provides "additional documents that were [allegedly] discovered after she submitted her discovery responses to Defendant." ECF 108-1. "Those documents include" a "Rental Record showing Hyundai Santa Fe was prepaid, Budget" and "Photographs of a vehicle of same make, model and year as rental car Plaintiff was

---

[11] It appears that plaintiff included these documents in her filing of January 8, 2024. *See* ECF 108-2 (Thrifty receipt); ECF 108-3 (MWAA police report); ECF 108-5 (document showing dismissal of a case against plaintiff in the District Court of Maryland for Harford County); ECF 108-6 (state's request for nolle prosequi in the same case against plaintiff in the District Court of Maryland for Harford County).

driving." *Id.* The "Rental Record" is apparently the document filed at ECF 108-2. The photograph is apparently that filed at ECF 108-11.

Plaintiff's submission includes several additional documents that, as far as the Court can discern, are intended as responses to the request for production served on plaintiff on March 31, 2023. These documents include: (1) a report by the Metropolitan Washington Airports Authority Police Department describing an investigation into plaintiff's alleged commission of a "Fraud-Swindle" involving a Hertz rental car (ECF 108-3); (2) a record of the District Court of Maryland for Harford County reflecting that a charge against plaintiff for being a fugitive from justice was dismissed (ECF 108-5); a *nolle prosequi* request in the same case (ECF 108-6); a Thrifty care rental return receipt (ECF 108-10); a photograph of earbuds (ECF 108-12); an unidentified call log (ECF 108-13 at 1); and what appears to be a text message log. ECF 108-13 at 2. However, even accounting for these documents, plaintiff has not tendered any response to defendant's requests for, *inter alia*, "[a]ll documents that identify each health care provider who examined or treated you as a result of the occurrence"; "[a]ll documents that support any claims for past or future loss of earnings or earning capacity as a result of the occurrence"; and "[a]ll documents that support claims for expenses and other economic damages, past and future." ECF 108-4 at 5.

## B.

As stated, plaintiff is self-represented. Therefore, I shall construe her Objection as one pertaining to Judge Copperthite's entire Recommendation. *See Dunbar*, 66 F.4th at 460–61. Accordingly, I shall consider the Sanctions Motion de novo.

Plaintiff's responses to defendant's requests for written discovery are plainly inadequate. As an initial matter, her interrogatory responses were untimely, even accounting for the several extensions to the discovery deadline necessitated by her failure to cooperate. In particular, plaintiff

submitted her interrogatory responses on September 22, 2023, *see* ECF 107-6, two weeks after the September 8, 2023, deadline set by the Order of August 8, 2023.  ECF 87.  And, to the extent that plaintiff's January 8, 2024 filing (ECF 108 to ECF 108-13) can be considered a "response" to defendant's requests for production, it was submitted four months after the end of discovery.

In addition, plaintiff's interrogatory answers do not appear to have been provided under oath.  The failure to provide sworn answers contravenes Fed. R. Civ. P. 33(b)(3)'s prescription that "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing *under oath*." (Emphasis added).

In any event, the substantive deficiencies in plaintiff's interrogatory responses are manifold.  As noted, plaintiff has provided no response at all to interrogatories 2, 5, and 7.  *See* ECF 107-4.  These interrogatories, which generally ask plaintiff to identify persons with whom she has spoken about the incident or who otherwise have information about the incident, are not trivial.  Denying defendant responsive information, if there is any, could impair defendant's ability to defend the case.

As far as the Court can discern, plaintiff has provided "complete" answers to interrogatories 1, 6, 14, 15, 16, 17, and 20, by responding with some variation of "no" or "not applicable."  *See* ECF 107-4 at 4–9.  But, plaintiff's responses to interrogatories 3, 4, 8, 9, 10, 11, 12, 13, 18, and 21, described above, are incomplete.  *See id.*  Indeed, her responses to interrogatories 8–13 are so cryptic, skeletal, and void of specificity that they are, in effect, no answers at all.  *Id.* at 6–7.  A statement such as "Denied lease" says almost nothing.  One is left to ask: A lease for what?  When?  And who denied it?  It is also worth noting that, although plaintiff

has provided basic information about her cell phone plan in response to interrogatory 22,[12] she has failed to provide her account number, claiming, implausibly, that it is unknown to her. *See id.* at 9.

Plaintiff's failure to provide specific and complete responses to interrogatories 8–13, each of which is in some way relevant to damages, and to provide *any* response to requests for production 18–20, which also concern damages, is particularly troubling. As Judge Copperthite noted, "[t]here has been no disclosure of medical bills, reports, identification of treating doctors or any information related to damages claimed by Plaintiff in th[e] Complaint." ECF 104 at 3. In this regard, I agree fully with Judge Copperthite's assessment that, with respect to plaintiff's request for damages, defendant has been "left truly in the dark," *id.* at 3, to an extent that threatens to deny him "an opportunity for a fair trial." *Id.* at 5.

Moreover, plaintiff appears to have failed altogether to respond to defendant's request for production of documents, issued on March 31, 2023. Her explanation that she was not aware of the document requests rings hollow. The email to which the document requests were attached stated, in part: "Attached are our interrogatories *and document requests* to you." ECF 107-1 (emphasis added). Moreover, defendant's counsel has certified that defendant's counsel inquired with plaintiff by email about the status of her responses to defendant's document requests on at least two occasions: May 4, 2023, and June 12, 2023. ECF 86-1, ¶¶ 5, 9. And, plaintiff's recent submission to this Court on January 8, 2024, consisting of miscellaneous rental car receipts, police

---

[12]   The interrogatory numbered "22" in the document that was apparently served on plaintiff, ECF 107-2 at 5, is numbered "21" in the document returned by plaintiff to defendant. *See* ECF 107-4 at 9.

reports, photographs, and phone logs, is not a cure. *See* ECF 108-3; ECF 108-5; ECF 108-6; ECF 108-10; ECF 108-12; ECF 108-13 at 1; ECF 108-13 at 2.[13]

On the basis of plaintiff's inadequate response to defendant's interrogatories and her complete failure to respond to defendant's requests for document production, Judge Copperthite concluded that the sanction of dismissal was warranted under the four factors from *Wilson*, 561 F.2d at 503–06. *See* ECF 104 at 3–5. Plaintiff has presented several excuses for her failure to participate in discovery, and the Court has, on each occasion, indulged her request for leniency. The discovery deadline has thus been extended more than six months past its original date. However, plaintiff's continued lack of progress in providing the necessary discovery, even as she fully participates in other aspects of this litigation, causes the Court to doubt her good faith. Therefore, I see no reason to depart from Judge Copperthite's determination, based both on the paper record and plaintiff's responses during the hearing, "that Plaintiff acted in bad faith in continuing to deny Defendants critical information to prepare a defense to this complaint." *Id.* at 4.

It is with respect to the sanction itself that I depart from the R and R. I am of the view that a sanction less severe than dismissal is appropriate at this juncture. *See Mut. Fed. Sav.*, 872 F.2d at 92 (requiring court to consider "effectiveness of less drastic sanctions").

Generally, a party who is dissatisfied with an adversary's discovery responses files a motion to compel, seeking a court order, and then moves for sanctions only if that order has been disobeyed. *See* Fed. R. Civ. P. 37(b)(2)(A). No motion to compel was filed, however, and

---

[13] The Memorandum Opinion of January 19, 2024 (ECF 110) called this submission "belated." *Id.* at 29. Plaintiff's submission of January 8, 2024 (ECF 108) was a timely response to the Court's Order of December 14, 2023. *See* ECF 106. Nonetheless, this submission, insofar as it was intended as a response to defendant's discovery requests, was "belated" because it came nearly four months after the close of discovery on September 9, 2023. *See* ECF 90.

therefore the Court had no occasion to issue an Order mandating that plaintiff must respond.  Given that plaintiff is pro se, such an Order would have been useful.  In my view, before imposing the sanction of dismissal, it is appropriate to issue an Order that requires the self-represented plaintiff to provide adequate discovery.

To be sure, as discussed, a party may move immediately for sanctions under Fed. R. Civ. P. 37(d) if the opposing party has failed entirely to respond to discovery requests, or has provided requests that are so inadequate that they are equivalent to a complete failure to respond.  *See Hathcock*, 53 F.3d at 40; *Basch*, 777 F.2d at 174; *Eller*, 2020 WL 7336730, at *13.  And, it is true that, at the time defendant filed the First Sanctions Motion, plaintiff had entirely failed to respond to defendant's discovery requests.  In such a circumstance, moving directly for sanctions without filing a motion to compel is appropriate, and granting the sanction of dismissal under Fed. R. Civ. P. 37(d) would not constitute an abuse of discretion.   Nonetheless, in an effort to afford this self-represented plaintiff every reasonable opportunity to prosecute her case, I choose to exercise my discretion by allowing her an opportunity to comply with a discovery Order that I shall enter.

However, I shall award the defendant costs for plaintiff's untimely cancelation of a deposition on July 12, 2023.  Defendant's counsel has represented that costs of $412.18 were incurred when plaintiff untimely canceled her deposition on that date.  ECF 107 at 2–3.  Plaintiff does not dispute the amount of the costs.  Rather, she claims that these costs "should be borne by the State of Maryland," because defendant's counsel knew at the time he scheduled the deposition that plaintiff "was experiencing 'computer issues' and could not provide a response on the Deposition . . . completion at that point."  ECF 105 at 5.

It is not clear in what respect defendant's "computer issues" precluded her from scheduling or sitting for a deposition.  Moreover, according to defendant, this was the third time that defendant

had canceled a deposition on short notice.  ECF 107 at 2.  In this context, plaintiff's claim of "computer issues" is not a credible excuse for her repeated failure to appear for scheduled depositions.  For that reason, an assessment of costs is appropriate.

Judge Copperthite recommended that defendant be awarded costs of $420.00.  ECF 104 at 6.  However, defendant states that costs of $412.18 were incurred on July 12, 2023, when, just before the deposition, plaintiff canceled her deposition.  ECF 107 at 2–3.  Therefore, I shall award the sum of $412.18, rather than $420.00.

## IV.    Conclusion

For the foregoing reasons, I shall deny the Sanctions Motion (ECF 92), in part, without prejudice to defendant's right to file a new motion if plaintiff fails to comply with the accompanying Order.  In particular, I shall afford plaintiff an opportunity to cure her discovery default, in accordance with the accompanying Order.  However, I shall award costs of $412.18.

I shall also deny the First Sanctions Motion (ECF 86), as moot.  *Cf. Goodman v. Diggs*, 986 F.3d 493, 498 (4th Cir. 2021); *Young v. City of Mt. Rainier*, 238 F.3d 567, 573 (4th Cir. 2001).

By February 5, 2024, plaintiff shall provide defendant with a complete response to the interrogatories and requests for production propounded on March 31, 2023.  A "complete" response is one that contains full answers to each numbered request or interrogatory.  To the extent that plaintiff claims that certain information is unknown or unavailable to her, she must describe, in detail, the efforts she made to obtain that information.  Further, plaintiff is directed to read carefully, and conform her responses to, the instructions that accompany the interrogatories and requests for production.

Moreover, plaintiff is advised that she is obligated to respond to interrogatory 12, because the information sought by that interrogatory is not protected by any privilege.  In addition, plaintiff

is advised that she is obligated to respond to interrogatory 13.  In the Court's view, that interrogatory is not unnecessarily broad.

Once plaintiff has responded adequately to defendant's discovery requests, defendant shall be afforded a second opportunity to depose plaintiff.  The deposition shall occur no later than February 23, 2024.

An Order follows, consistent with this Memorandum Opinion.


Date: January 25, 2024                                          /s/
                                                     Ellen Lipton Hollander
                                                     United States District Judge