IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

VERONICA W. OGUNSULA,

    *Plaintiff*,

v.

MICHAEL WARRENFELTZ,

    *Defendant*.

Civil Action No. ELH-20-2568

**MEMORANDUM OPINION**

The self-represented plaintiff, Veronica Ogunsula, has filed a civil rights suit against Trooper First Class Michael Warrenfeltz, a Maryland State Police ("MSP") officer.  ECF 60. Plaintiff claims that defendant violated her Fourth Amendment rights by conducting a traffic stop without reasonable suspicion that plaintiff had committed a traffic violation.  *Id.*[1]

Warrenfeltz has filed a motion to dismiss or, in the alternative, motion for summary judgment.  ECF 96.  The Motion is supported by a memorandum (ECF 96-2) and three exhibits: a "Declaration of Michael Warrenfeltz" (ECF 96-3, "Warrenfeltz Declaration" or "Declaration"); an MSP "incident report" (ECF 96-4) ("Incident Report"); and excerpts from plaintiff's deposition. ECF 96-5 ("Ogunsula Deposition") (collectively, the "Motion").[2]  Plaintiff did not respond to the Motion.  *See* Docket.

---

[1] Initially, in addition to Warrenfeltz, plaintiff sued the Maryland State Police; Colonel Woodrow Jones, III, Superintendent of the MSP; and Michael Capasso, Warden of the Harford County Detention Center.  *See* ECF 1.  As a result of the Court's earlier rulings, discussed *infra*, Warrenfeltz is the only remaining defendant.

[2] Defendant also submitted a proposed order.  ECF 96-2.

1

Several other motions are pending.  In particular, plaintiff has filed a motion for reconsideration of the Court's ruling on defendant's motion for sanctions (ECF 114, "Motion for Reconsideration"); a motion to keep under seal certain subpoenas that plaintiff has asked the Court to issue (ECF 117, "Motion to Seal"); and a motion renewing plaintiff's request for the issuance of those subpoenas (ECF 128, "Motion Regarding Subpoenas").

No hearing is necessary to decide the motions.  *See* Local Rule 105.6.  For the reasons that follow, I shall construe the Motion as one for summary judgment and grant it.  And, I shall deny the Motion to Seal and the Motion Regarding Subpoenas.  I shall also deny, as moot, the Motion for Reconsideration.

## I.      Procedural Background

Plaintiff filed suit on August 31, 2020.  ECF 1 (the "Complaint").  In addition to naming Warrenfeltz as a defendant, plaintiff asserted claims against the MSP; Colonel Woodrow Jones, III, Superintendent of the MSP; and Michael Capasso, Warden of the Harford County Detention Center.  *See id.*  Warrenfeltz, Jones, and the MSP (the "MSP Defendants") moved to dismiss or, in the alternative, for summary judgment.  ECF 23; ECF 23-1 to ECF 23-3.  Capasso also moved to dismiss or, in the alternative, for summary judgment.  ECF 31; ECF 31-1 to ECF 31-4.  Plaintiff opposed both motions.  ECF 28; ECF 34.  While the motions were pending, plaintiff filed a motion to amend her Complaint.  ECF 37; ECF 37-1.

In a Memorandum Opinion (ECF 41) and Order (ECF 42) of December 23, 2021, I construed Capasso's motion as a motion to dismiss and granted it.  However, I granted plaintiff leave to amend the Complaint to include facts that, if proven, would establish that Capasso was personally involved in the alleged deprivation of plaintiff's constitutional rights.  ECF 41 at 64. In addition, I construed the MSP Defendants' motion as a motion to dismiss and granted it, with

leave to amend the Complaint to include facts that, if proven, would establish that Warrenfeltz initiated the traffic stop of plaintiff on the basis of her race.  *See* ECF 41 at 67; ECF 42 at 1.

On February 10, 2022, plaintiff moved for leave to file a second amended complaint ("SAC").  ECF 48.  She also submitted a First Amended Complaint (ECF 48-2) and a "Second Amended Complaint".  ECF 48-3 (underlining in original).  Capasso filed a "Motion to Dismiss First and Second Amended Complaint, or in the Alternative, Motion for Summary Judgment."  ECF 49; ECF 49-1.  And, the MSP Defendants filed a "Motion to Dismiss Second Amended Complaint and Opposition to Plaintiff's Motion to Alter or Amend."  ECF 51; ECF 51-1.

By Memorandum Opinion (ECF 58) and Order (ECF 59) of August 11, 2022, I granted, in part, plaintiff's motion for leave to file the SAC.  I also granted Capasso's motion and dismissed him from the suit.  ECF 58 at 32; ECF 59, ¶ 2.  In addition, I granted the MSP Defendants' motion, except insofar as the SAC alleged that Warrenfeltz stopped plaintiff without reasonable suspicion of wrongdoing, in violation of the Fourth Amendment.  ECF 58 at 32; ECF 59, ¶ 4.  In sum, I determined that the "sole claim that plaintiff [could] advance is her Fourth Amendment reasonable suspicion claim against Warrenfeltz."  ECF 58 at 32.

The SAC, which is now the operative complaint, is docketed at ECF 60.  On September 1, 2022, Warrenfeltz answered the suit.  ECF 61.  Under a Scheduling Order entered on September 7, 2022, discovery was to close on February 17, 2023.  ECF 62 at 3.   However, five extensions to the deadline followed.  *See* ECF 68; ECF 69; ECF 70; ECF 76; ECF 77; ECF 85; ECF 87; ECF 89; ECF 90.  And, discovery finally closed on September 9, 2023. ECF 90.  Thereafter, on September 22, 2023, defendant filed an "Amended Motion for Sanctions" (ECF 92) ("Sanctions Motion"), claiming that plaintiff had substantially failed to respond to written discovery requests served on March 31, 2023.  *Id.* at 3.

On November 2, 2023, defendant filed the instant Motion.  ECF 96.  On November 15, 2023, plaintiff filed a "Request for Clarification on the Deadline to Respond to Defendant's Motion to Dismiss or Summary Judgment."  ECF 99.  It stated:  "The Plaintiff, Veronica W. Ogunsula, files this Motion to request guidance from the Court regarding the deadline for Plaintiff to respond to the Defendant's Motion to Dismiss and or Summary Judgment (ECF #96)."  *Id.*  The Court responded to plaintiff's request for clarification by letter of November 22, 2023.  ECF 100.  In the letter, the Court stated:  "Local Rule 105.2(a) provides: 'Unless otherwise ordered by the Court, all memoranda in opposition to a motion shall be filed within fourteen (14) days of the service of the motion and any reply memoranda within fourteen (14) days after service of the opposition memoranda.'"  *Id.*  However, as noted, plaintiff never responded to the Motion.  *See* Docket.

By Memorandum Opinion (ECF 110) and Order (ECF 111) of January 19, 2024, I granted the Sanctions Motion in part and denied it in part.  In particular, to compensate defendant for costs incurred when plaintiff failed to appear for a scheduled deposition, I awarded costs of $412.18 to defendant.  ECF 110 at 32.  I also noted that "plaintiff's continued evasion of [her] discovery responsibilities is unacceptable."  *Id.* at 2.  "Nonetheless, mindful that plaintiff is self-represented and ha[d] to [that] point not been subject to a discovery order entered by the Court, I . . . afford[ed] her a final opportunity to provide adequate responses to defendant's written discovery requests," *id.* at 2–3, and denied the request to dismiss the case.  *Id.* at 3.  Therefore, I ordered plaintiff to provide, by February 5, 2024, adequate responses to the interrogatories and requests for production propounded by defendant.  *Id.* at 32–33; ECF 111, ¶ 3.  I otherwise denied the Motion for Sanctions.  ECF 111, ¶ 2.

On February 3, 2024, plaintiff filed the Motion for Reconsideration of the Court's disposition of the Sanctions Motion.  ECF 114.  In a response (ECF 115), defendant asserted that

plaintiff had failed to cure her various discovery defaults, notwithstanding the Court's Order directing her to do so by February 5, 2024.  *See id.*  However, defendant did not file a new motion for sanctions.  The Motion for Reconsideration remains pending.  *See Docket*.

On March 12, 2024, plaintiff filed a "Motion to the Court" (ECF 119) requesting that the Court direct the Clerk to issue four subpoenas.  *See* ECF 118; ECF 118-1.  Plaintiff also moved to seal the requested subpoenas.  *See* ECF 117.  The Motion to Seal is pending.  *See* Docket.

By Memorandum Opinion (ECF 121) and Order (ECF 122) of March 20, 2024, the Court granted plaintiff's request, in part.  In particular, the Court directed the Clerk to issue a subpoena addressed to the "'T-Mobile, Legal and Emergency Response Team'" in Parsippany, New Jersey, requesting "'call detail and text for 240-486-1427 from 8/12/2017 to 9/1/2017.'"  ECF 121 at 4 (quoting ECF 118 at 7–8); *see* ECF 121 at 5.  I otherwise denied plaintiff's request for the issuance of subpoenas.  *See* ECF 121 at 5.  On April 16, 2024, plaintiff filed the Motion Regarding Subpoenas (ECF 128), which is pending.

## II.     Factual Background

On the morning of August 30, 2017, plaintiff was driving a rental car on Interstate 95 in Maryland, on her way to New Jersey.  ECF 96-5 (Ogunsula Deposition) at 6, 7, 26.  The rental car was a "sedan" or "hatchback" with "four seats and a trunk."  *Id.* at 15.[3]  It did not have tinted windows.  *Id.*  While driving, plaintiff was receiving directions from the speaker on her cell phone, which was "[i]n the right passenger seat."  *Id.* at 23.

After plaintiff paid a toll at "the only tunnel [where] you pay leaving Maryland," *id.* at 6, she "noticed that there was a car to [her] right," which "seemed to be tracking" her.  *Id.* at 13.  The

---

[3] At her deposition, plaintiff identified the rental car as a "Kia Sportage."  ECF 96-5 at 7.  However, in a document provided to defense counsel on November 29, 2023, plaintiff identified the car as a "Santa Fe, Hyundai."  ECF 107-9.

car was a sedan, *id.* at 19, with "dark tinted windows." *Id.* at 18.  Plaintiff was driving in the "far left lane," and the sedan was traveling in the adjacent lane to her right. *Id.* at 20.  The sedan with tinted windows drove beside plaintiff for "between 5 and 15 seconds." *Id.* at 18.

During this time, plaintiff did not "move" her phone, which remained "[i]n the right passenger seat." *Id.* at 25.  However, she was "trying to put a headphone in [her] ear," *id.* at 28, because she "was going to make a call." *Id.* at 26; *see id.* at 30.  In particular, she "picked up the [e]arbud from [her] lap," and "[l]ooked at it briefly" to determine whether it was intended for the left or the right ear. *Id.* at 29; *see id.* at 28.  Plaintiff "eventually put [the earbud] in [her] ear." *Id.* at 29.  However, she did not plug the earbud into her phone. *Id.* at 30.

After driving alongside plaintiff for five to fifteen seconds, the sedan with tinted windows "pulled ahead of" plaintiff while remaining in the lane to plaintiff's right. *Id.* at 19.  At that point, plaintiff noticed that the sedan was mounted with antennas. *Id.*  Therefore, plaintiff "assumed [the driver] was a police officer." *Id.* at 19–20.  After realizing that the driver of the sedan with tinted windows was a police officer, plaintiff "checked [her] speed to make sure [she] wasn't speeding," but did not stop her car. *Id.* at 21.  Plaintiff did not move her phone while the sedan was in front of her. *Id.* at 25.

"[E]ventually," the police sedan "ended up behind" plaintiff. *Id.*  At some point after the police car "moved behind" plaintiff, she "briefly picked up the phone and put it in [her] lap." *Id.*  Because plaintiff "thought [the police] car might have wanted to speed ahead of" her, she "pulled over to the third lane." *Id.*  But, "[t]he police car pulled over behind" her and "within 10 or 15 seconds turned on [its] lights." *Id.* at 22.

Thereafter, plaintiff stopped her car "on the right shoulder" of the highway. *Id.* at 34.  Warrenfeltz, who was dressed in a police uniform, approached plaintiff's car on the passenger's

side. *Id.* at 37. Defendant "asked plaintiff if she was on her cell phone." *Id.* at 38. In response,

plaintiff "told him that she had moved her cell phone from the passenger's seat to her lap." *Id.*

Defendant requested plaintiff's license and registration, which plaintiff provided. *Id.* at 40.

Defendant "identified the driver [of the car he had stopped] as Veronica Ogunsula." ECF

96-3 (Warrenfeltz Declaration), ¶ 4. When defendant "ran [plaintiff's] information through the

National Crime Information Center" database, he "learned that [plaintiff] had an active warrant

against her in the State of Virginia." *Id.* ¶ 5. The warrant, which was issued to the Metropolitan

Washington Airports Authority Police ("MWAAP") on March 30, 2017, alleged that plaintiff had

failed to return a vehicle that she had rented on January 19, 2017, which was due for return on

February 10, 2017. ECF 96-4 at 15.[4] Defendant obtained confirmation from the MWAAP that

plaintiff was "still listed as wanted by [the] agency for theft by bailee." *Id.* at 9 (typeface altered).

"As a result of the warrant," defendant "arrested [plaintiff] at 11:39 a.m." and "transported [her]

to the Harford County Detention Center." ECF 96-3, ¶ 7.

In the Incident Report (ECF 96-4), defendant provided an "Original Narrative," dated

September 7, 2017, describing the circumstances of plaintiff's arrest, as follows, *id.* at 4:

> On 08/30/2017, at approximately 1119 hours, I (TFC Warrenfeltz #6510) was on
> patrol operating unmarked MSP vehicle M-33. I was traveling in lane three on
> northbound I-95 at the 76 mile marker in Harford County, Maryland, when I
> observed a gray Hyundai Santa Fe, with Maryland registration 2CF1641, traveling
> in lane one. As I passed the vehicle, I observed the operator of the vehicle to be
> holding a cell phone in [her] right hand. The operator of the vehicle was
> manipulating the screen with her right thumb. I initiated a traffic stop on the vehicle,
> and it came to a complete stop on northbound I-95 at the 77 mile marker.
>
> I made contact with the operator and sole occupant of the vehicle via the passenger
> side window. The driver was identified via her Maryland driver's license as
> Veronica Wynona Ogunsula (1/F, [redacted]/1965).

---

[4] The pages displaying the warrant are not imprinted with electronic page numbers. The
cited page is the fifteenth page in the submission docketed at ECF 96-4.

A NCIC check of Ogunsula revealed a warrant through Reagan National Airport Police, Virginia. The warrant was confirmed, and the Reagan National Airport Police advised that they would extradite Ogunsula. Ogunsula was arrested at 1139 hours, and transported to the Harford County IPC to await extradition.

The Incident Report indicates that defendant charged plaintiff with being a fugitive. *See* ECF 96-4 (Incident Report) at 20. However, defendant did not charge plaintiff with a traffic violation. *See id*.

Plaintiff was detained until September 2, 2017. *See* ECF 48-3. Records previously filed by plaintiff in this case indicate that the warrant for her arrest was later withdrawn and that the Office of the State's Attorney for Harford County entered a *nolle prosequi* with respect to the charge that she was a fugitive. *See* ECF 28-3.

### III.    Standard of Review

### A.

The Motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. *See* ECF 96; ECF 96-2 at 6–7. A motion styled in this manner implicates the Court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dep't, Inc. v. Montgomery Cnty.*, 788 F. Supp. 2d 431, 436–37 (D. Md. 2011).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007). Under Rule 12(d), however, a court, in its discretion, may consider matters outside of the pleadings. If the court does so, "the motion must be treated as one for summary judgment under Rule 56," but "[a]ll parties must be given a reasonable opportunity to present all the material

that is pertinent to the motion."  Fed. R. Civ. P. 12(d); *see Adams Hous., LLC v. City of Salisbury, Md.*, 672 F. App'x 220, 222 (4th Cir. 2016) (per curiam).

A court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so.  *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998) (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials."); *see also Adams Hous., LLC*, 672 F. App'x at 222 (citation omitted) ("The court must give notice to ensure that the party is aware that it must 'come forward with all of [its] evidence.'").  However, when the movant expressly captions its motion as one for summary judgment "in the alternative," and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious."  *Laughlin*, 149 F.3d at 261.

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it."  5 C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366 (3d ed. 2004, April 2022 update).  But, this discretion "should be exercised with great caution and attention to the parties' procedural rights."  *Id.*  In general, courts are guided by whether consideration of extraneous material "is

likely to facilitate the disposition of the action" and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.*

In my view, it is appropriate to construe the Motion as one for summary judgment. Discovery closed on September 9, 2023 (ECF 90), after five extensions of the deadline. *See* ECF 68; ECF 69; ECF 70; ECF 76; ECF 77; ECF 85; ECF 87; ECF 89; ECF 90. The parties have had ample opportunity to "to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). Because discovery is complete, construing the Motion as a motion to dismiss would delay rather than "facilitate" the "disposition of the action." WRIGHT & MILLER, § 1366. Therefore, I shall construe the Motion as one for summary judgment, and apply the standard provided by Rule 56(a) of the Federal Rules of Civil Procedure.

**B.**

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986); *see also Cybernet, LLC v. David*, 954 F.3d 162, 168 (4th Cir. 2020); *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018); *Iraq Middle Mkt. Dev. Found v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017). "Applying that standard, the facts and all reasonable inferences drawn therefrom must be viewed in the light most favorable to the nonmoving party." *Aleman v. City of Charlotte*, 80 F.4th 264, 283–84 (4th Cir. 2023); *see Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990); *Dewberry Eng'rs Inc. v. Dewberry Grp., Inc.*, 77 F.4th 265, 277 (4th Cir. 2023); *Knibbs v. Momphard*, 30 F.4th 200, 206 (4th Cir. 2022); *Walker v. Donahoe*, 3 F.4th 676, 682 (4th Cir. 2021); *Hannah P. v. Coats*, 916 F.3d 327, 336 (4th Cir. 2019); *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017). The nonmoving party may

avoid summary judgment by demonstrating that there is a genuine dispute of material fact that precludes the award of summary judgment as a matter of law. *Ricci v. DeStefano*, 557 U.S. 557, 585–86 (2009); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986); *Gordon v. CIGNA Corp.*, 890 F.3d 463, 470 (4th Cir. 2018).

Pursuant to Fed. R. Civ. P. 56(c)(1), where the moving party bears the burden of proof on the issue at trial, he must support his factual assertions by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials . . . ."  But, where the nonmovant bears the burden of proof at trial, the moving party may show that it is entitled to summary judgment by citing to evidence in the record, or "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325; *see also* Fed. R. Civ. P. 56(c)(1)(B).

The Supreme Court has clarified that not every factual dispute will defeat a summary judgment motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original).  A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* at 248.

A dispute of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*; *see CTB, Inc. v. Hog Slat, Inc.*, 954 F.3d 647, 658 (4th Cir. 2020); *Variety Stores, Inc.*, 888 F.3d at 659; *Sharif v. United Airlines, Inc.*, 841 F.3d 199, 2014 (4th Cir. 2016); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013).  On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must

prevail as a matter of law." *Anderson*, 477 U.S. at 252; *see McAirlaids, Inc. v. Kimberly-Clark Corp.*, 756 F.3d 307, 310 (4th Cir. 2014).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [its] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004); *see Celotex Corp.*, 477 U.S. at 322–24. The nonmovant "must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015) (internal quotation marks omitted); *see also Anderson*, 477 U.S. at 252; *Thompson v. Virginia*, 878 F.3d 89, 97 (4th Cir. 2017). "Fanciful inferences and bald speculations of the sort no rational trier of fact would draw or engage in at trial need not be drawn or engaged in at summary judgment." *Local Union 7107 v. Clinchfield Coal Co.*, 124 F.3d 639, 640 (4th Cir. 1997) (citations omitted). In short, "[u]nsupported speculation is not sufficient to defeat a summary judgment motion." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987); *see also Reddy v. Buttar*, 38 F.4th 393, 403–04 (4th Cir. 2022); *CTB, Inc.*, 954 F.3d at 659; *Harris v. Home Sales Co.*, 499 F. App'x 285, 294 (4th Cir. 2012).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *accord Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). Therefore, in considering a summary judgment motion, the court may not weigh the evidence or make credibility determinations. *Brown v. Lott*, No. 21-6928, 2022 WL 2093849, at *1 (4th Cir. June 10, 2022) (per curiam); *Knibbs*, 30 F.4th at 207, 213; *Betton v. Belue*, 942 F.3d 184, 190 (4th Cir. 2019); *Wilson*

*v. Prince George's Cnty.*, 893 F.3d 213, 218–19 (4th Cir. 2018); *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007).  In the face of conflicting evidence, such as competing affidavits, a court must deny summary judgment, because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility. *See Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644–45 (4th Cir. 2002).

"[S]elf-serving affidavits offered by the non-movant can sometimes defeat summary judgment." *Pfaller v. Amonette*, 55 F.4th 436, 450 (4th Cir. 2022); *see Harrell v. DeLuca*, 97 F.4th 180, 187 (4th Cir. March 27, 2024) (recognizing that the self-serving declaration of a nonmovant "can defeat summary judgment"); *Mann v. Failey*, 578 F. App'x 267, 273 n.2 (4th Cir. 2014) (per curiam) (unpublished but orally argued) ("[T]he record could defeat summary judgment even if the evidence consisted exclusively of so-called 'self-serving' declarations from [the nonmovant] himself."); *see also* Fed. R. Civ. P. 56(c)(1)(A), (4).  In contrast, self-serving statements made by the movant are not sufficient. *Pfaller*, 55 F.4th at 450 ("[H]ere it is the *movant* . . . who offers his own statements as the key evidence in support of summary judgment.  That is insufficient.") (emphasis in original); *Knibbs*, 30 F.4th at 222 (stating that "the dissent, like the district court, contravenes Rule 56 by accepting [the movant's] self-serving statements and reading the evidence in the light most favorable to *him*.") (emphasis in original).

"Courts in the Fourth Circuit may not consider inadmissible evidence on a motion for summary judgment." *Giles v. Nat'l R.R. Passenger Corp.*, 59 F.4th 696, 704 (4th Cir. 2023) (citing *Md. Highways Contractors Ass'n, Inc. v. Maryland*, 933 F.2d 1246, 1251 (4th Cir. 1991)).  Therefore, to the extent that evidence amounts to inadmissible hearsay, it "cannot create a factual

dispute" for purposes of summary judgment.  *Stanton v. Elliott*, 25 F.4th 227, 237 n.7 (4th Cir. 2022) (citing *Md. Highways Contractors Ass'n*, 933 F.3d at 1251); *see also Graves v. Lioi*, 930 F.3d 307, 326 n.15 (4th Cir. 2019) (observing that "hearsay, like other evidence inadmissible at trial, is ordinarily an inadequate basis for summary judgment") (citation and internal quotation marks omitted).

However, "[i]f a party fails to object to the inadmissibility of evidence submitted by its opponent in the summary judgment proceedings, the court may consider the evidence."  11 Moore's Federal Practice – Civil § 56.91[7] (2024).  This is because "[t]he failure to raise the issue . . . constitutes a waiver of the objection for purposes of summary judgment." *Id.*; *accord Munoz v. Int'l Alliance of Theatrical Stage Emp. and Moving Picture Machine Operators*, 563 F.2d 205, 214 (5th Cir. 1977) ("Inadmissible material that is considered by a district court without challenge may support a summary judgment."); *Peterson v. State Farm Ins. Co.*, ___ F. Supp. 3d ___ , 2023 WL 8792147, at *2 (N.D. Ala. Dec. 19, 2023) (stating that, "in the absence of an objection," inadmissible "evidence could and, if material, should be factored into a summary judgment decision") (citation and internal quotation marks omitted); *see also Desrosiers v. Hartford Life and Acc. Co.*, 515 F.3d 87, 92 (1st Cir. 2008); *Jones v. Owens-Corning Fiberglas Corp. and Amchem Prods., Inc.*, 69 F.3d 712, 718 (4th Cir. 1995); *Glenn v. United States*, 271 F.2d 880, 883 (6th Cir. 1959); *Campbell v. Hanover Ins. Co.*, 457 B.R. 452, 459 (W.D.N.C. 2011).

### IV.   Discussion

As noted, plaintiff did not respond to the Motion.  *See* Docket.  A "failure to respond, however, does not fulfill the burdens imposed on moving parties by [Fed. R. Civ. P.] 56." *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993); *see Maryland v. Univ. Elections, Inc.*, 729 F.3d 370, 380 (4th Cir. 2013).  The Fourth Circuit has explained, *Custer*, 12 F.3d at 416:

Section (c) of Rule 56 requires that the moving party establish, in addition to the absence of a dispute over any material fact, that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Although the failure of a party to respond to a summary judgment motion may leave uncontroverted those facts established by the motion, the moving party must still show that the uncontroverted facts entitle the party to "a judgment as a matter of law." The failure to respond to the motion does not automatically accomplish this. Thus, the court, in considering a motion for summary judgment, must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law. This duty of the court is restated in section (e) of the rule, providing, "if the adverse party does not so respond, summary judgment, *if appropriate*, shall be entered against the adverse party." Fed. R. Civ. P. 56(e) (emphasis [in *Custer*]).

Therefore, notwithstanding plaintiff's failure to respond, I must first determine whether the evidence that defendant has submitted in support of the Motion "shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). And, if I conclude that the evidence shows that there is no genuine dispute of material fact, I must then determine whether the undisputed facts establish that "the movant is entitled to judgment as a matter of law." *Id.*

Warrenfeltz argues that he had reasonable suspicion to initiate a traffic stop of plaintiff's vehicle because the undisputed facts establish that he "observed Plaintiff manipulating the earbud and her cell phone" while driving, in violation of Md. Code (2020 Repl. Vol., 2023 Supp.), § 21-1124.1 and § 21-1124.2 of the Transportation Article ("Transp."). ECF 96-2 at 8.

Transp. § 21-1124.1(b) provides, in part, that "an individual may not use a text messaging device to write, send, or read a text message or an electronic message while operating a motor vehicle in the travel portion of the roadway." And, Transp. § 21-1124.2(d)(2) provides: "A driver of a motor vehicle that is in motion may not use the driver's hands to use a handheld telephone other than to initiate or terminate a wireless telephone call or to turn on or turn off the handheld telephone."

Alternatively, Warrenfeltz asserts that, even if the stop was not supported by reasonable suspicion, he is nonetheless entitled to qualified immunity.  ECF 96-2 at 11–13.  According to Warrenfeltz, an officer is "entitled to qualified immunity if '[he] reasonably but mistakenly conclude[d] that probable cause [or reasonable suspicion] was present.'"  *Id.* at 12 (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 54 (2018)) (additional citation and internal quotation marks omitted).  And, in Warrenfeltz's view, based on his "observ[ation] [that] Plaintiff [was] handling both her earbud and her phone to some degree," it "was reasonable . . . to conclude [that] Plaintiff was violating Maryland's prohibition on using mobile devices while driving."  ECF 96-2 at 13.

As noted, I first consider whether there are any genuine disputes of material fact that would foreclose resolution of the case by way of summary judgment.  In conducting this inquiry, I "need consider only the cited materials."  Fed. R. Civ. P. 56(c)(3).  Because plaintiff did not respond to the Motion, the only "cited materials" for my consideration are those cited by defendant in the Motion: the Warrenfeltz Declaration (ECF 96-3), the Incident Report (ECF 96-4), and the Ogunsula Deposition.  ECF 96-5.[5]

In the Incident Report, Warrenfeltz wrote that he was in an unmarked police vehicle, traveling northbound on Interstate 95, when he "passed [Ogunsula's] vehicle."  ECF 96-4 at 4.  At that time, he "observed the operator . . . to be holding a cell phone in [her] right hand."  *Id.*  Further, Warrenfeltz wrote:  "The operator of the vehicle was manipulating the screen with her right thumb."  *Id.*  Warrenfeltz's statements in the Declaration are to the same effect.  ECF 96-3, ¶ 3.

---

[5] The Motion occasionally cites certain allegations in the SAC (ECF 60).  *See, e.g.,* ECF 96-2 at 10.  But, it is well settled that "[a]llegations in a complaint are not evidence, and cannot defeat a motion for summary judgment."  *Cambridge Capital Grp. v. Pill*, 20 Fed. App'x 121, 124–25 (4th Cir. 2001); *see Celotex Corp.*, 477 U.S. at 324 ("Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves . . . .").

Of significance, Ogunsula's deposition testimony tends to confirm the veracity of defendant's statements in the Declaration and the Incident Report. At her deposition, plaintiff admitted that, when defendant's car "moved behind" her, she "briefly picked up [her] phone and put it in [her] lap." ECF 96-5 at 25. Plaintiff testified that she did so "to . . . attach [her] headphone," because she "was going to make a call." *Id.* at 26; *see also id.* at 30 ("I probably . . . was just going to make a quick call . . . ."). And, plaintiff acknowledged that, when defendant approached her car after effecting the stop and "asked her if she was on her cell phone," she "told him that she had moved her cell phone from the passenger's seat to her lap." *Id.* at 38.

The evidence before the Court demonstrates, without genuine dispute, that plaintiff handled her phone while operating her motor vehicle in defendant's vicinity, and that defendant observed her handling her phone. Therefore, I turn to consider whether, given these undisputed facts, defendant "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This issue implicates the legality of the traffic stop. As noted, defendant argues that the traffic stop was lawful because it was based on reasonable suspicion that plaintiff had committed a traffic violation. ECF 96-2 at 8.

In general, a traffic stop begins when a car "is pulled over for investigation of a traffic violation." *Arizona v. Johnson*, 555 U.S. 323, 333 (2009). It is well settled that when a police officer stops an automobile and detains the occupant, the stop constitutes a seizure that implicates the Fourth Amendment. *Kansas v. Glover*, 589 U.S. 376, 380 (2020); *United States v. Cloud*, 994 F.3d 233, 241 (4th Cir. 2021); *United States v. Drakeford*, 992 F.3d 255, 262 (4th Cir. 2021); *United States v. Curry*, 965 F.3d 313, 319 (4th Cir. 2020) (en banc); *see, e.g., Brendlin v. California*, 551 U.S. 249, 255 (2007); *Whren v. United States*, 517 U.S. 806, 809–10 (1996); *United States v. Sharpe*, 470 U.S. 675, 682 (1985); *Delaware v. Prouse*, 440 U.S. 648, 653 (1979);

*United States v. Feliciana*, 974 F.3d 519, 522 (4th Cir. 2020); *United States v. Bowman*, 884 F.3d 200, 209 (4th Cir. 2018); *United States v. Sowards*, 690 F.3d 583, 588–89 (4th Cir. 2012); *United States v. Ortiz*, 669 F.3d 439, 444 (4th Cir. 2012); *United States v. Digiovanni*, 650 F.3d 498, 506 (4th Cir. 2011), *abrogated in part on other grounds by Rodriguez v. United States*, 575 U.S. 348 (2015).

By its plain text, the Fourth Amendment "does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable." *Florida v. Jimeno*, 500 U.S. 248, 250 (1991); *see Illinois v. Rodriguez*, 497 U.S. 177, 183–84 (1990); *Sharpe*, 470 U.S. at 682; *United States v. Mendenhall*, 446 U.S. 544, 551 (1980). Therefore, "'the ultimate touchstone of the Fourth Amendment is reasonableness.'" *Riley v. California*, 573 U.S. 373, 381 (2014) (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006) (internal quotation marks omitted)); *see also Fernandez v. California*, 571 U.S. 292, 298 (2014); *Maryland v. Wilson*, 519 U.S. 408, 411 (1997); *Jimeno*, 500 U.S. at 250; *United States v. Aigbekaen*, 943 F.3d 713, 719–20 (4th Cir. 2019).

The "test of reasonableness under the Fourth Amendment is an objective one." *Los Angeles County v. Rettele*, 550 U.S. 609, 614 (2007) (citing *Graham v. Connor*, 490 U.S. 386, 397 (1989)). Reasonableness is determined by balancing "the intrusion on the individual's Fourth Amendment interests against [the] promotion of legitimate governmental interests." *Maryland v. Buie*, 494 U.S. 325, 331 (1990). As the Supreme Court explained in *Pennsylvania v. Mimms*, 434 U.S. 106, 109 (1977) (per curiam): "Reasonableness, of course, depends 'on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers.'" (quoting *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975)); *see United States v. Sokolow*, 490 U.S. 1, 9 (1989); *see also United States v. Lyles*, 910 F.3d 787, 796 (4th Cir. 2018)

("The magnitude of the intrusion relative to the seriousness of any offense 'is of central relevance to determining reasonableness[.]'") (quoting *Maryland v. King*, 569 U.S. 435, 446 (2013)).

In *Santos v. Frederick County Bd. of Comm'rs*, 725 F.3d 451 (4th Cir. 2013), the Fourth Circuit summarized "three categories of police-citizen encounters," *id.* at 460–61:

> First, "consensual" encounters, the least intrusive type of police-citizen interaction, do not constitute seizures and, therefore, do not implicate Fourth Amendment protections. *Florida v. Bostick*, 501 U.S. 429, 434[] (1991). Second, brief investigative detentions—commonly referred to as "*Terry*" stops"—require reasonable, articulable suspicion of criminal activity. *Terry* [*v. Ohio*, 392 U.S. 1 (1968)]. Finally, arrests, the most intrusive type of police-citizen encounter, must be supported by probable cause. *Devenpeck v. Alford*, 543 U.S. 146, 152[] (2006).
>
> A police-citizen encounter rises to the level of a Fourth Amendment seizure when "the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen . . . ." *United States v. Jones*, 678 F.3d 293, 299 (4th Cir. 2012) (quoting *Terry*, 392 U.S. at 19 n.16 [ ]). This inquiry is objective, [*United States v.*] *Weaver*, 282 F.3d [302, 309 (4th Cir. 2002)], asking whether "'in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" *Jones*, 678 F.3d at 299 (quoting *Mendenhall*, 446 U.S. at 553 [ ]). An encounter generally remains consensual when, for example, police officers engage an individual in routine questioning in a public place. *United States v. Gray*, 883 F.2d 320, 323 (1989); *see also Bostick*, 501 U.S. at 434[ ] ("[M]ere police questioning does not constitute a seizure.").

Generally, warrantless seizures and searches are per se unreasonable, subject only to a few well-established exceptions. *See Katz v. United States*, 389 U.S. 347, 357 (1967); *see also Riley*, 573 U.S. at 382 (stating that, "[i]n the absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement"); *Kentucky v. King*, 563 U.S. 452, 459–60 (2011). The government bears the burden of justifying a warrantless seizure. *Feliciana*, 974 F.3d at 523; *United States v. Kehoe*, 893 F.3d 232, 237 (4th Cir. 2018); *United States v. McGee*, 736 F.3d 263, 269 (4th Cir. 2013).

What has become known as the "*Terry* stop and frisk" is one of the exceptions to the warrant requirement. *See Terry*, 392 U.S. 1. The seminal case of *Terry v. Ohio* permits a police

officer to stop and temporarily detain an individual for investigative purposes, without violating the Fourth Amendment's prohibition against unreasonable searches and seizures, so long as the officer has a reasonable, articulable suspicion, based on specific facts, that criminal activity is afoot. *Id.* at 30; *see United States v. Peters*, 60 F.4th 855, 862 (4th Cir. 2023); *Feliciana*, 974 F.3d at 522; *see also United States v. Arvizu*, 534 U.S. 266, 273 (2002); *Reid v. Georgia*, 448 U.S. 438, 440 (1980); *United States v. Slocumb*, 804 F.3d 677, 681 (4th Cir. 2015); *United States v. Massenburg*, 654 F.3d 480, 485 (4th Cir. 2011). The purpose of a *Terry* stop is investigative, that is, to verify or to dispel the officer's suspicion. *Terry*, 392 U.S. at 22, 30.[6]

The Supreme Court has said that "the usual traffic stop is more analogous to a so-called 'Terry stop,' . . . than to a formal arrest." *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984); *see Rodriguez*, 575 U.S. at 354; *Knowles v. Iowa*, 525 U.S. 113, 117 (1998). Fourth Circuit law is to the same effect. *See United States v. Williams*, 808 F.3d 238, 245 (4th Cir. 2015) (A vehicle stop is "more akin to an investigative detention than a custodial arrest"); *see also United States v. Bernard*, 927 F.3d 799, 805 (4th Cir. 2019). Because a traffic stop is a seizure, it is subject to the Fourth Amendment's reasonableness requirement. *Whren*, 517 U.S. at 810; *Prouse*, 440 U.S. at 653. "[T]o pass constitutional muster," the officer must have "a constitutionally adequate basis" for it. *United States v. White*, 836 F.3d 437, 440–41 (4th Cir. 2016), *abrogated on other grounds by United States v. Stitt*, 586 U.S. 27 (2018).

With respect to assessing the constitutionality of a traffic stop, which is more akin to an investigative detention than an arrest, the Supreme Court has adopted the dual inquiry standard articulated in *Terry*, 392 U.S. 1. *See Johnson*, 555 U.S. at 330–31; *Bernard*, 927 F.3d at 805;

---

[6] With respect to a frisk, the police officer must have a reasonable suspicion that the suspect is both armed and dangerous. *Johnson*, 555 U.S. at 327. But, certainty is not required. *Terry*, 392 U.S. at 27.

*Bowman*, 884 F.3d at 209; *United States v. Palmer*, 820 F.3d 640, 648 (4th Cir. 2016); *Williams*, 808 F.3d at 245; *United States v. Guijon-Ortiz*, 660 F.3d 757, 764 (4th Cir. 2011).  Under the dual inquiry standard, the court examines "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place."  *Sharpe*, 470 U.S. at 682; *see also Bernard*, 927 F.3d at 805; *United States v. Hill*, 852 F.3d 377, 381 (4th Cir. 2017); *Williams*, 808 F.3d at 245; *Guijon-Ortiz,* 660 F.3d at 764.

Reasonable suspicion requires "'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'"  *Glover*, 589 U.S. at 380 (citation omitted); *see Ornelas v. United States*, 517 U.S. 690, 696 (1996) (stating that reasonable suspicion is "a particularized and objective basis for suspecting the person stopped of criminal activity. . . ."); *see also Wingate v. Fulford*, 987 F.3d 299, 305 (4th Cir. 2021); *Feliciana*, 974 F.3d at 523; *Williams*, 808 F.3d at 246; *United States v. Black,* 707 F.3d 531, 539 (4th Cir. 2013); *Massenburg*, 654 F.3d at 486; *United States v. Griffin,* 589 F.3d 148, 152 (4th Cir. 2009).  But, it "is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence," although a "minimal level of objective justification [is required] for making the stop." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000); *see Glover*, 589 U.S. at 380; *United States v. Critchfield*, 81 F.4th 390 F.4th 393 (4th Cir. 2023); *United States v. Lawing*, 703 F. 3d 229, 236 (4th Cir. 2012); *United States v. Christmas*, 222 F.3d 141, 143 (4th Cir. 2000).

To be sure, the matter of reasonable, articulable suspicion is sometimes elusive.  The Supreme Court has acknowledged the difficulty in defining the term "articulable suspicion." *Ornelas*, 517 U.S. at 699–700.  Moreover, the Court has recognized that the standard is "'not readily, or even usefully, reduced to a neat set of legal rules.'"  *Id.* at 695–96.  However, "the detaining officer [must] '. . . either articulate why a particular behavior is suspicious or logically

demonstrate, given the surrounding circumstances, that the behavior is likely to be indicative of some more sinister activity than may appear at first glance.'" *Williams*, 808 F.3d at 246 (citation omitted).

Reasonable suspicion is an "objective standard." *United States v. Johnson*, 734 F.3d 270, 275 (4th Cir. 2014). Therefore, the officer's subjective state of mind is not considered. *United States v. George*, 732 F.3d 296, 299 (4th Cir. 2013), *cert. denied*, 572 U.S. 1009 (2014); *United States v. Powell*, 666 F.3d 180, 186 (4th Cir. 2011).

Notably, the standard "'depends on the factual and practical considerations of everyday life on which *reasonable and prudent men*, not legal technicians, act.'" *Glover*, 589 U.S. at 380 (citations omitted) (emphasis added in *Glover*). Moreover, officers must be permitted to make "'commonsense judgments and inferences about human behavior.'" *Id.* (citation omitted); *see Navarette v. California*, 572 U.S. 393, 404 (2014). Therefore, in assessing reasonable suspicion, courts must "give due weight to common sense judgments reached by officers in light of their experience and training." *United States v. Perkins*, 363 F.3d 317, 321 (4th Cir. 2004); *see also Glover*, 589 U.S. at 383; *Critchfield*, 81 F.4th at 393; *Feliciana*, 974 F.3d at 525; *United States v. McBride*, 676 F.3d 385 (4th Cir. 2012); *Sowards*, 690 F.3d at 587–88; *United States v. Johnson*, 599 F.3d 339, 343 (4th Cir. 2010); *United States v. Branch*, 537 F.3d 328, 33–37 (4th Cir. 2008), *cert. denied*, 555 U.S. 1118 (2009).

As the Fourth Circuit has said, the court "must not discount the officers' experience and training 'to detect the nefarious in the mundane.'" *Critchfield*, 81 F.4th at 395 (quoting *United States v. McCoy*, 513 F.3d 405, 415 (4th Cir. 2008)). However, a mere "'hunch'" or "'inchoate and unparticularized suspicion'" is not enough. *Wardlow*, 528 U.S. at 124 (citation omitted); *see Critchfield*, 81 F.4th at 393; *United States v. Gist-Davis*, 41 F.4th 259, 264 (4th Cir. 2022). "The

suspicion must be articulable . . . ." *Critchfield*, 81 F.4th at 393.  But, "'[t]o be reasonable is not to be perfect.'"  *Glover*, 589 U.S. at 381 (citation omitted).

In making this assessment, a court considers the totality of circumstances.  *See Arvizu*, 534 U.S. at 273; *Peters*, 60 F.4th at 864; *Cloud*, 994 F.3d at 242.  "A host of factors can contribute to a basis for reasonable suspicion, including the context of the stop, the crime rate in the area, and the nervous or evasive behavior of the suspect."  *George*, 732 F.3d at 299 (citing *Wardlow*, 528 U.S. at 124).  And, "[f]acts innocent in themselves may together amount to reasonable suspicion." *United States v. Mitchell*, 963 F.3d 385, 390 (4th Cir. 2020); *see Sokolow*, 490 U.S. at 9–10.

The fact that a vehicle is being driven contrary to the laws governing the operation of motor vehicles generally gives rise to probable cause or reasonable, articulable suspicion of a crime. *Prouse*, 440 U.S. at 650; *Whren,* 517 U.S. at 817–18.  In *Bernard*, 927 F.3d at 805, the Fourth Circuit reiterated:  "'When an officer observes a traffic offense—however minor—he has probable cause to stop the driver of the vehicle.'" (quoting *United States v. Williams*, 740 F.3d 308, 312 (4th Cir. 2014)).  And, "'once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures.'"  *Ohio v. Robinette*, 519 U.S. 33, 38–39 (1996) (quoting *Mimms*, 434 U.S. at 111 n.6).[7]  The stop of the driver ordinarily does not violate the Constitution, so long as the stop is no longer than necessary to perform the traditional incidents of a routine traffic stop.  *Rodriguez*, 575 U.S. at 350; *Illinois v. Caballes*, 543 U.S. 405, 407 (2005); *Prouse*, 440 U.S. at 650; *Branch*, 537 F.3d at 335.

---

[7] A passenger may also be required to exit a vehicle during a routine traffic stop.  *Wilson*, 519 U.S. at 414–15.

However, "the Government cannot rely upon post hoc rationalizations to validate those seizures that happen to turn up contraband." *United States v. Foster*, 824 F.3d 84, 89 (4th Cir. 2016) (citation and internal quotation marks omitted); *see Peters*, 60 F.4th at 864.  As the Fourth Circuit has said, "[i]t is the *police officer* who 'must be able to point to specific and articulable facts' — not a party's brief." *Peters*, 60 F.4th at 864 (citing *Terry*, 392 U.S. at 21) (emphasis in *Peters*).

According to defendant, his stop of plaintiff was justified by reasonable, articulable suspicion that she was using her phone in a manner prohibited by Transp. §§ 21-1124.1, 2.  ECF 96-2 at 8–9.  As noted, Transp. § 21-1124.1(b) states, in part, that "an individual may not use a text messaging device to write, send, or read a text message or an electronic message while operating a motor vehicle in the travel portion of the roadway."  And, Transp. § 21-1124.2(d)(2) provides: "A driver of a motor vehicle that is in motion may not use the driver's hands to use a handheld telephone other than to initiate or terminate a wireless telephone call or to turn on or turn off the handheld telephone."

I have determined that there is no genuine dispute that defendant observed plaintiff "holding a cell phone in her right hand" while she was driving on Interstate 95, in the vicinity of the police officer, who was in an unmarked police car.  ECF 96-3 (Warrenfeltz Declaration), ¶ 3; *see also* ECF 96-4 at 4.  In my view, defendant's observation to this effect was sufficient to create a reasonable, articulable suspicion that plaintiff was "us[ing] a text messaging device to write, send, or read a text message or an electronic message while operating a motor vehicle in the travel portion of the roadway," in violation of Transp. § 21-1124.1(b).  In addition, defendant's observation was sufficient to create a reasonable, articulable suspicion that plaintiff was "us[ing]

[her] hands to use a handheld telephone other than to initiate or terminate a wireless telephone call or to turn on or turn off the handheld telephone," in violation of Transp. § 21-1124.2(d)(2).

In sum, I readily conclude that defendant's stop of plaintiff was lawful, because the officer had reasonable, articulable suspicion that plaintiff was operating her vehicle in violation of Maryland law.  It follows that the stop did not violate the Fourth Amendment.  Because defendant's stop of Ogunsula did not violate the Fourth Amendment, defendant is entitled to summary judgment.  And, having concluded that the stop was lawful, I need not address defendant's invocation of qualified immunity.  *E.W. ex rel. T.W. v. Dolgos*, 884 F.3d 172, 178 (4th Cir. 2018) (citation and internal quotation marks omitted).

### V.    Remaining Motions

As noted, plaintiff's Motion to Seal (ECF 117), Motion for Reconsideration (ECF 114), and Motion Regarding Subpoenas (ECF 128) are pending.

The Motion to Seal (ECF 117) appears to ask the Court to permanently seal the subpoenas plaintiff requested in her filing of March 12, 2024.  *See* ECF 118; ECF 118-1.  However, the Motion to Seal provides no argument that sealing of the requested subpoenas would be appropriate. *See* ECF 117.  Defendant did not respond to the Motion to Seal.  *See* Docket.

It is well established that the common law provides "a right of access [to] *all* judicial records and documents." *In re Application of the United States for an Order Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d 283, 290 (4th Cir. 2013) (quoting *In re Knight Publ'g Co.*, 743 F.2d 231, 235 (4th Cir. 1984)) (additional citation omitted).  This right can be defeated only if "'the public's right of access is outweighed by competing interests.'"  *In re Application*, 707 F.3d at 290 (quoting *In re Knight*, 743 F.2d at 235) (additional citation omitted); *see also Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988) (holding that common law right of access

may be abrogated in "unusual circumstances," when "countervailing interests heavily outweigh the public interests in access").

Applying this standard, I see no basis on which to conclude that sealing of the requested subpoenas would be warranted. Therefore, I shall deny the Motion to Seal. ECF 117.

In the Motion for Reconsideration (ECF 114), plaintiff asks the Court to issue a protective order specifying that she need not produce medical records that predate the events of August 30, 2017, by more than one year. Because my disposition of the Motion will result in the dismissal of the suit, any question regarding the scope of plaintiff's discovery obligations is now moot. Therefore, I shall deny, as moot, the Motion for Reconsideration (ECF 114).

In the Motion Regarding Subpoenas (ECF 128), plaintiff asks the Court to issue subpoenas to "The Washington Metropolitan Area Transit Authority," "AT&T," and the "Hyatt Regency." *Id.* at 1. Plaintiff indicates that the requested subpoenas would produce information concerning "the disappearance of the phone" on which she claims she stored case-related information. *Id.* at 2. In particular, according to plaintiff, the requested subpoenas would facilitate her recovery of a lost phone containing photographs and videos of "a vehicle of the same make, model and year that the Plaintiff was driving" when she was pulled over by defendant. *Id.*

Fed. R. Civ. P. 45(a)(3) provides: "The clerk must issue a subpoena, signed but otherwise in blank, to a party who requests it. That party must complete it before service." But, Local Rule 102.3 provides:

> The Clerk shall not issue any subpoena under Fed. R. Civ. P. 45(a)(3) to any self-represented litigant without first obtaining an order from the Court authorizing the issuance of the subpoena. Before entering any such order the Court may require the litigant to state the reasons why the subpoena should be issued, and the Court may refuse to authorize issuance of the subpoena if it concludes that the subpoena imposes undue burden or expense on the person subject to the subpoena or upon the U.S. Marshal or other court officer who would be required to serve it

under 28 U.S.C. § 1915, or is otherwise inconsistent with the requirements of Fed. R. Civ. P. 26 and 45(d).

I readily conclude that granting the subpoenas discussed in the Motion Regarding Subpoenas would be "inconsistent with the requirements of Fed. R. Civ. P. 26[b][1]." That Rule provides, in part:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Especially in light of my disposition of the Motion, which will result in dismissal of plaintiff's suit, issuance of subpoenas to aid plaintiff in the recovery of her lost cell phone would not be "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Therefore, I shall deny the Motion Regarding Subpoenas. ECF 128.

## VI.   Conclusion

I am mindful that plaintiff earnestly believes that she was subjected to an unlawful traffic stop. I also recognize that the traffic stop cascaded into a series of events that led to plaintiff's unfortunate detention. The Court certainly regrets any indignities that plaintiff may have experienced. But, what happened to plaintiff as a result of the legal traffic stop was not the "fault" of the officer, who lawfully executed the traffic stop, learned of the outstanding warrant, and acted appropriately in detaining plaintiff because of it.

For the foregoing reasons, I shall grant the Motion (ECF 96); deny the Motion for Reconsideration (ECF 114), as moot; deny the Motion to Seal (ECF 117); and deny the Motion Regarding Subpoenas. ECF 128.

An Order follows, consistent with this Memorandum Opinion.

Date: May 14, 2024

_____/s/_____
Ellen Lipton Hollander
United States District Judge