IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

VERONICA W. OGUNSULA,

    *Plaintiff*,

    v.

MICHAEL WARRENFELTZ,

    *Defendant*.

Civil Action No. ELH-20-2568

**MEMORANDUM OPINION**

Veronica Ogunsula, the self-represented plaintiff, filed suit pursuant to 42 U.S.C. § 1983 against Trooper First Class Michael Warrenfeltz, a Maryland State Police ("MSP") officer. ECF 60 ("Second Amended Complaint" or "SAC"). Plaintiff, "an African American woman," *id.* at 3, claimed, *inter alia*, that Warrenfeltz violated her Fourth Amendment rights by conducting a traffic stop without reasonable, articulable suspicion that plaintiff had committed a traffic violation. *Id.*[1]

Warrenfeltz filed a post-discovery motion to dismiss the Second Amended Complaint or, in the alternative, for summary judgment. ECF 96. It was supported by a memorandum (ECF 96-1) (collectively, "Summary Judgment Motion") and exhibits. ECF 96-2 to ECF 95-5. Plaintiff did not respond to the Summary Judgment Motion. *See* Docket. By Memorandum Opinion and Order of May 14, 2024, I construed defendant's motion as one for summary judgment and granted it. *See* ECF 129; ECF 130.

---

[1] Initially, in addition to Warrenfeltz, plaintiff sued the Maryland State Police; Colonel Woodrow Jones, III, Superintendent of the MSP; and Michael Capasso, Warden of the Harford County Detention Center. *See* ECF 1. As a result of the Court's earlier rulings, discussed *infra*, Warrenfeltz is the only remaining defendant.

On June 11, 2024, plaintiff filed a "Motion to Amend or Alter Judgment." ECF 131 ("Motion"). The next day, plaintiff filed a "corrected" version of the Motion. ECF 132; ECF 132-1. She asserts that the "Motion provides new evidence regarding certain facts th[e] Court considered in its Memorandum" Opinion of May 14, 2024. ECF 132 at 4. The Motion is supported by 36 pages of exhibits. *See id.* at 20–44; ECF 131-1. Defendant opposes the Motion. ECF 133 ("Opposition"). Plaintiff has replied. ECF 134 ("Reply"). The Reply is supported by ten pages of exhibits. *See* ECF 134-1.

No hearing is necessary to decide the Motion. *See* Local Rule 105.6. For the reasons that follow, I shall deny the Motion.

## I.    Procedural Background

Plaintiff filed suit on August 31, 2020. ECF 1 ("Complaint"). In addition to naming Warrenfeltz as a defendant, plaintiff asserted claims against the MSP; Colonel Woodrow Jones, III, Superintendent of the MSP; and Michael Capasso, Warden of the Harford County Detention Center. *See id.* With respect to Warrenfeltz, plaintiff asserted: "TFC Warrenfeltz while acting under color of Maryland law, violated Ms. Ogunsula's rights under the Fourth Amendment to the U.S. Constitution . . . ." *Id.* at 6.

Warrenfeltz, Jones, and the MSP (the "MSP Defendants") moved to dismiss or, in the alternative, for summary judgment. ECF 23; ECF 23-1 to ECF 23-3. Capasso also moved to dismiss or, in the alternative, for summary judgment. ECF 31; ECF 31-1 to ECF 31-4. Plaintiff opposed both motions. ECF 28; ECF 34. While the motions were pending, plaintiff filed a motion to amend her Complaint. ECF 37; ECF 37-1. With respect to Warrenfeltz, plaintiff sought to add a claim under the Equal Protection Clause of the Fourteenth Amendment. *See* ECF 37-1 at 2.

By Memorandum Opinion (ECF 41) and Order (ECF 42) of December 23, 2021, I construed Capasso's motion as a motion to dismiss and granted it. However, I granted plaintiff leave to amend the Complaint to include facts that, if proven, would establish that Capasso was personally involved in the alleged deprivation of plaintiff's constitutional rights. ECF 41 at 64. In addition, I construed the MSP Defendants' motion as a motion to dismiss and granted it, also with leave to amend the Complaint to include facts that, if proven, would establish that Warrenfeltz initiated the traffic stop on the basis of plaintiff's race, in violation of the Equal Protection Clause of the Fourteenth Amendment. *See* ECF 41 at 67; ECF 42 at 1. I dismissed the MSP and Jones from the suit. *See* ECF 42.

On February 10, 2022, plaintiff moved for leave to file the Second Amended Complaint. ECF 48. She also filed a "Memorandum in Support of Plaintiff's Motion to Alter or Amend Judgment," requesting reconsideration of the Court's ruling of December 23, 2021 (ECF 48-1, "Motion for Reconsideration")[2]; a First Amended Complaint (ECF 48-2); and a "<u>Second</u> Amended Complaint." ECF 48-3 (underlining in original). The proposed SAC alleged, *inter alia*, that Warrenfeltz's stop of plaintiff was unlawful under the Fourth Amendment and racially discriminatory, in violation of the Equal Protection Clause of the Fourteenth Amendment. *See* ECF 48-3 at 2. And, it asserted claims against the MSP and Jones, even though they had already been dismissed from the suit. *Id.* at 1–2, 7.

Thereafter, Capasso filed a "Motion to Dismiss First and Second Amended Complaint, or in the Alternative, Motion for Summary Judgment." ECF 49; ECF 49-1. In addition, the MSP

---

[2] Although plaintiff styled ECF 48-1 as a "Memorandum *in Support of* Plaintiff's Motion to Alter or Amend Judgment," plaintiff's filing of February 10, 2022, did not include a separate motion to alter or amend. (Emphasis added). Nevertheless, in the Memorandum Opinion of August 11, 2022 (ECF 58), I construed ECF 48-1 as a motion to alter or amend. *See* ECF 58 at 4.

Defendants filed a combined motion requesting dismissal of the Second Amended Complaint and opposing plaintiff's "Motion to Alter or Amend." ECF 51; ECF 51-1.

By Memorandum Opinion (ECF 58) and Order (ECF 59) of August 11, 2022, I denied the Motion for Reconsideration (ECF 48-1) and granted, in part, plaintiff's motion for leave to file the SAC. In particular, I concluded that plaintiff had not alleged that Capasso was personally involved in any deprivation of plaintiff's constitutional rights. ECF 58 at 17–18. Therefore, I granted Capasso's motion and dismissed him from the suit. *Id.* at 32; ECF 59, ¶ 2.

In addition, I concluded that plaintiff had failed to allege that Warrenfeltz violated plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment. *See* ECF 58 at 20. But, I determined that plaintiff had sufficiently alleged that Warrenfeltz stopped her without reasonable, articulable suspicion of wrongdoing, in violation of the Fourth Amendment. ECF 58 at 32. I otherwise concluded that plaintiff had not stated a claim against any of the MSP defendants. *See* ECF 59, ¶ 4. Therefore, I granted the MSP Defendants' motion, "except as to plaintiff's reasonable suspicion claim against Warrenfeltz." ECF 58 at 32; ECF 59, ¶ 4. As a result of my ruling, the "sole claim that plaintiff [could] advance [was] her Fourth Amendment reasonable suspicion claim against Warrenfeltz." ECF 58 at 32.

The SAC was docketed at ECF 60. Warrenfeltz answered the suit on September 1, 2022. ECF 61. Under a Scheduling Order entered on September 7, 2022 (ECF 62), discovery was to close on February 17, 2023. *Id.* at 3. However, five extensions to the deadline followed. *See* ECF 68; ECF 69; ECF 70; ECF 76; ECF 77; ECF 85; ECF 87; ECF 89; ECF 90. Discovery finally closed on September 9, 2023. ECF 90.[3] Thereafter, on September 22, 2023, defendant filed an

---

[3] The Memorandum Opinion of January 19, 2024 (ECF 110) recounts in detail the discovery proceedings in this case. *Id.* at 5–11. I incorporate that discussion here.

"Amended Motion for Sanctions" (ECF 92) ("Sanctions Motion"), claiming that plaintiff had substantially failed to respond to written discovery requests served on March 31, 2023. *Id.* at 3.

On November 2, 2023, Warrenfeltz filed the Summary Judgment Motion. ECF 96. Then, on November 15, 2023, plaintiff filed a "Request for Clarification on the Deadline to Respond to Defendant's Motion to Dismiss or Summary Judgment." ECF 99. She stated: "The Plaintiff, Veronica W. Ogunsula, files this Motion to request guidance from the Court regarding the deadline for Plaintiff to respond to the Defendant's Motion to Dismiss and or Summary Judgment (ECF #96)." *Id.* The Court responded to plaintiff's request for clarification by letter of November 22, 2023. ECF 100. The letter stated, in part: "Local Rule 105.2(a) provides: 'Unless otherwise ordered by the Court, all memoranda in opposition to a motion shall be filed within fourteen (14) days of the service of the motion and any reply memoranda within fourteen (14) days after service of the opposition memoranda.'" *Id.* Plaintiff never sought an extension of the deadline to respond to the Motion. Indeed, as noted, plaintiff never responded. *See* Docket.

By Memorandum Opinion (ECF 110) and Order (ECF 111) of January 19, 2024, I granted the Sanctions Motion in part and denied it in part. In particular, to compensate defendant for costs incurred when plaintiff failed to appear for her scheduled deposition, I awarded costs of $412.18 to defendant. ECF 110 at 32. I also noted that "plaintiff's continued evasion of [her] discovery responsibilities is unacceptable." *Id.* at 2. Nonetheless, "mindful that plaintiff is self-represented" and that she had to that "point not been subject to a discovery order entered by the Court," I afforded "her a final opportunity to provide adequate responses to defendant's written discovery requests." *Id.* at 2–3. And, I denied the defendant's request to dismiss the case. *Id.* at 3. Instead, I ordered plaintiff to provide, by February 5, 2024, adequate responses to the interrogatories and

requests for production propounded by defendant.  *Id.* at 32–33; ECF 111, ¶ 3.  I otherwise denied the Motion for Sanctions.  ECF 111, ¶ 2.

On February 3, 2024, plaintiff filed a "Motion for Reconsideration" of the Court's disposition of the Sanctions Motion.  ECF 114.  In defendant's response (ECF 115), he asserted that plaintiff had failed to cure her various discovery defaults, notwithstanding the Court's Order directing her to do so by February 5, 2024.  *See id.*  However, defendant did not file a new motion for sanctions.

On March 12, 2024, plaintiff filed a "Motion to the Court" (ECF 119), asking the Court to direct the Clerk to issue four subpoenas.  *See* ECF 118; ECF 118-1.  Plaintiff also moved to seal the requested subpoenas.  *See* ECF 117 ("Motion to Seal Subpoenas").

By Memorandum Opinion (ECF 121) and Order (ECF 122) of March 20, 2024, the Court granted plaintiff's request for subpoenas, in part.  In particular, the Court directed the Clerk to issue a subpoena addressed to the "'T-Mobile, Legal and Emergency Response Team'" in Parsippany, New Jersey, requesting "'call detail and text for 240-486-1427 from 8/12/2017 to 9/1/2017.'"  ECF 121 at 4 (quoting ECF 118 at 7–8); *see* ECF 121 at 5.  I otherwise denied plaintiff's request for the issuance of subpoenas.  *See* ECF 121 at 5.

Plaintiff renewed her request for the issuance of certain subpoenas in a "Motion Regarding Subpoenas," filed on April 16, 2024.  ECF 128.

By Memorandum Opinion (ECF 129) and Order (ECF 130) of May 14, 2024, I granted the Summary Judgment Motion (ECF 96), denied the Motion to Seal Subpoenas (ECF 117), denied the Motion Regarding Subpoenas (ECF 128), and denied, as moot, the Motion for Reconsideration (ECF 114).  *See* ECF 129 at 2; ECF 130.  I also directed the Clerk to close the case.  ECF 130.

Plaintiff's Motion to Alter or Amend followed on June 11, 2024. And, she filed a "corrected" version of the Motion on June 12, 2024. ECF 132.

## II.   Factual Background[4]

On the morning of August 30, 2017, plaintiff was driving a rental car on Interstate 95 in Maryland, on her way to New Jersey. ECF 96-5 (Ogunsula Deposition) at 6, 7, 26. The rental car was a "sedan" or "hatchback" with "four seats and a trunk." *Id.* at 15.[5] It did not have tinted windows. *Id.* While driving, plaintiff was receiving directions from the speaker on her cell phone, which was "[i]n the right passenger seat." *Id.* at 23.

After plaintiff paid a toll at "the only tunnel [where] you pay leaving Maryland," *id.* at 6, she "noticed that there was a car to [her] right," which "seemed to be tracking" her. *Id.* at 13. The car was a sedan, *id.* at 19, with "dark tinted windows." *Id.* at 18. Plaintiff was driving in the "far left lane," and the sedan was traveling in the adjacent lane to her right. *Id.* at 20. The sedan with tinted windows drove beside plaintiff for "between 5 and 15 seconds." *Id.* at 18.

During this time, plaintiff did not "move" her phone, which remained "[i]n the right passenger seat." *Id.* at 25. However, she was "trying to put a headphone in [her] ear," *id.* at 28, because she "was going to make a call." *Id.* at 26; *see id.* at 30. In particular, she "picked up the [e]arbud from [her] lap," and "[l]ooked at it briefly" to determine whether it was intended for the

---

[4] The presentation of facts first derives largely from my Memorandum Opinion of May 14, 2024. ECF 129 at 5–8. Here, as there, I view "the facts and all reasonable inferences drawn therefrom . . . in the light most favorable to the nonmoving party," the plaintiff. *Aleman v. City of Charlotte*, 80 F.4th 264, 283–84 (4th Cir. 2023).

[5] At her deposition, plaintiff identified the rental car as a "Kia Sportage." ECF 96-5 at 7. However, in a document provided to defense counsel on November 29, 2023, plaintiff identified the car as a "Santa Fe, Hyundai." ECF 107-9.

left or the right ear. *Id.* at 29; *see id.* at 28. Plaintiff "eventually put [the earbud] in [her] ear." *Id.* at 29. However, she did not plug the earbud into her phone. *Id.* at 30.

After driving alongside plaintiff for five to fifteen seconds, the sedan with tinted windows "pulled ahead of" plaintiff while remaining in the lane to plaintiff's right. *Id.* at 19. At that point, plaintiff noticed that the sedan was mounted with antennas. *Id.* Therefore, plaintiff "assumed [the driver] was a police officer." *Id.* at 19–20. After realizing that the driver of the sedan with tinted windows was a police officer, plaintiff "checked [her] speed to make sure [she] wasn't speeding," but did not stop her car. *Id.* at 21. Plaintiff did not move her phone while the sedan was in front of her. *Id.* at 25.

"[E]ventually," the police sedan "ended up behind" plaintiff. *Id.* At some point after the police car "moved behind" plaintiff, she "briefly picked up the phone and put it in [her] lap." *Id.* Because plaintiff "thought [the police] car might have wanted to speed ahead of" her, she "pulled over to the third lane." *Id.* But, "[t]he police car pulled over behind" her and "within 10 or 15 seconds turned on [its] lights." *Id.* at 22.

Thereafter, plaintiff stopped her car "on the right shoulder" of the highway. *Id.* at 34. Warrenfeltz, who was dressed in a police uniform, approached plaintiff's car on the passenger's side. *Id.* at 37. Defendant "asked plaintiff if she was on her cell phone." *Id.* at 38. In response, plaintiff "told him that she had moved her cell phone from the passenger's seat to her lap." *Id.* Defendant requested plaintiff's license and registration, which plaintiff provided. *Id.* at 40.

Defendant "identified the driver [of the car he had stopped] as Veronica Ogunsula." ECF 96-3 (Warrenfeltz Declaration), ¶ 4. When defendant "ran [plaintiff's] information through the National Crime Information Center" database, he "learned that [plaintiff] had an active warrant against her in the State of Virginia." *Id.* ¶ 5. The warrant was issued on March 30, 2017, by a

Magistrate of the General District Court for Arlington, Virginia, to the Metropolitan Washington

Airports Authority Police ("MWAAP").  ECF 96-4 at 15.[6]  It alleged that plaintiff had failed to

return a vehicle that she had rented on January 19, 2017, which was due for return on February 10,

2017.  *Id.*  Of relevance, defendant obtained confirmation from the MWAAP that plaintiff was

"still listed as wanted by [the] agency for theft by bailee."  *Id.* at 9 (typeface altered).  "As a result

of the warrant," defendant "arrested [plaintiff] at 11:39 a.m." and "transported [her] to the Harford

County Detention Center."  ECF 96-3, ¶ 7.

In the Incident Report (ECF 96-4), defendant provided an "Original Narrative," dated

September 7, 2017, describing the circumstances of plaintiff's arrest, as follows, *id.* at 4:

> On 08/30/2017, at approximately 1119 hours, I (TFC Warrenfeltz #6510) was on
> patrol operating unmarked MSP vehicle M-33. I was traveling in lane three on
> northbound I-95 at the 76 mile marker in Harford County, Maryland, when I
> observed a gray Hyundai Santa Fe, with Maryland registration 2CF1641, traveling
> in lane one. As I passed the vehicle, I observed the operator of the vehicle to be
> holding a cell phone in [her] right hand. The operator of the vehicle was
> manipulating the screen with her right thumb. I initiated a traffic stop on the vehicle,
> and it came to a complete stop on northbound I-95 at the 77 mile marker.
>
> I made contact with the operator and sole occupant of the vehicle via the passenger
> side window. The driver was identified via her Maryland driver's license as
> Veronica Wynona Ogunsula (1/F, [redacted]/1965).
>
> A NCIC check of Ogunsula revealed a warrant through Reagan National Airport
> Police, Virginia. The warrant was confirmed, and the Reagan National Airport
> Police advised that they would extradite Ogunsula. Ogunsula was arrested at 1139
> hours, and transported to the Harford County IPC to await extradition.

The Incident Report indicates that defendant charged plaintiff with being a fugitive.  *See*

ECF 96-4 (Incident Report) at 20.  However, defendant did not charge plaintiff with a traffic

violation.  *See id.*

---

[6] The pages displaying the warrant are not imprinted with electronic page numbers.  The
cited page is the fifteenth page in the submission docketed at ECF 96-4.

Plaintiff was detained until September 2, 2017.  *See* ECF 48-3.  Records previously filed by plaintiff in this case indicate that the warrant for her arrest was later withdrawn and that the Office of the State's Attorney for Harford County entered a *nolle prosequi* with respect to the charge that she was a fugitive.  *See* ECF 28-3.

### III.    Legal Standard

Plaintiff states:  "Veronica Ogunsula, the Plaintiff, files this Motion under Federal Rules of Civil Procedure Rule 59(d) and (e) to respectfully move the Court's set aside [sic] and vacate its order and judgment of May 14, 2024."  ECF 132 at 1.  In addition, plaintiff states:  "This Motion may alternatively be reviewed under Rule 60(b)."  *Id.* at 5.

Fed. R. Civ.  P. 59(e) is captioned "Motion to Alter or Amend a Judgment."  It provides: "A motion to alter or amend a judgment must be filed no later than 28 days after the entry of judgment."  Fed. R. Civ. P. 60(b) is captioned "Relief From a Judgment or Order."  Fed. R. Civ. P. 60(c)(1) provides:  "A motion under Rule 60(b) must be made within a reasonable time—and for [the] reasons [identified in Fed. R. Civ. P. 60(b)(1)–(3)] no more than a year after the entry of judgment or order or the date of the proceeding."

As an initial matter, I must determine whether to evaluate the Motion under Rule 59(e) or, instead, Rule 60(b).  "[A] motion filed under both Rule 59(e) and Rule 60(b) should be analyzed only under Rule 59(e) if it was filed no later than [28] days after entry of the adverse judgment and seeks to correct that judgment."  *Robinson v. Wix Filtration Corp., LLC*, 599 F.3d 403, 411 (4th Cir. 2010) (citations omitted).  Judgment was entered on May 14, 2024.  *See* ECF 130.  The last day in the 28-day period for the filing of a motion under Rule 59(e) was June 11, 2024.  Plaintiff filed the Motion on June 11, 2024.  ECF 131.  However, on June 12, 2024, plaintiff filed a "corrected" version of the Motion.  ECF 132.  Nevertheless, because plaintiff filed the initial

version of the Motion on June 11, 2024, I shall review the Motion under Fed. R. Civ. Proc. 59(e). *See Robinson*, 599 F.3d at 411–12.

The purpose of Rule 59(e) is to "give[] a district court the chance to rectify its own mistakes in the period immediately following its decision." *Banister v. Davis*, 590 U.S. 504, 508 (2020) (citation and internal quotation marks omitted); *see Zinkand v. Brown*, 478 F.3d 634, 637 (4th Cir. 2007); *Pac. Ins. Co. v. American Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998).  Allowing the district court this opportunity helps to "spar[e] the parties and the appellate courts the burden of unnecessary appellate proceedings." *Pac. Ins. Co.*, 148 F.3d at 403.   Nonetheless, "'reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly." *Id.* (quoting 11 Wright et al., Federal Practice and Procedure § 2810.1 at 124 (2d ed. 1995) ("Wright and Miller 1995").  Indeed, "because of the narrow purposes for which they are intended, Rule 59(e) motions typically are denied."  11 Wright et al., Federal Practice and Procedure § 2810.1 at 171 (3d ed. 2012).

Rule 59(e) does not provide a standard by which to evaluate a motion to alter or amend a judgment.  However, Fourth Circuit "case law makes clear [] that Rule 59(e) motions can be successful in only three situations: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Zinkand*, 478 F.3d at 637 (citation and internal quotation marks omitted); *see Ingle ex rel. Estate of Ingle v. Yelton*, 439 F.3d 191, 197 (4th Cir. 2006); *U.S. ex rel. Becker v. Westinghouse Savannah River Co.*, 305 F.3d 284, 290 (4th Cir. 2002), *cert. denied*, 538 U.S. 1012 (2003); *EEOC v. Lockheed Martin Corp.*, 116 F.3d 110, 112 (4th Cir. 1997).

The Fourth Circuit has cautioned that other uses of Rule 59(e) are inappropriate.  For example, a party may not use a Rule 59(e) motion to "raise arguments [that] could have been raised

11

prior to the issuance of the judgment" or to "argue a case under a novel legal theory that the party had the ability to address in the first instance." *Pac. Ins. Co.*, 148 F.3d at 403; *see also Matter of Reese*, 91 F.3d 37, 39 (7th Cir. 1996) ("A motion under Rule 59(e) is not authorized to enable a party to complete presenting his case after the court has ruled against him.") (citation and internal quotation marks omitted).  Nor may a party use a Rule 59(e) motion to "'relitigate old matters.'" *Pac. Ins. Co.*, 148 F.3d at 403 (quoting Wright and Miller 1995 § 2810.1 at 127–28).

The decision whether to alter or amend a judgment is firmly within a court's discretion. *See, e.g., Bogart v. Chapell*, 396 F.3d 548, 555 (4th Cir. 2005).  However, "[t]o justify reconsideration on th[e] basis" that a court committed a clear error of law, it is not enough for a plaintiff to show that the court's judgment was "'just maybe or probably wrong.'" *Fontell v. Hassett*, 891 F. Supp. 2d 739, 741 (D. Md. 2012) (quoting *TFWS, Inc. v. Franchot*, 572 F.3d 186, 194 (4th Cir. 2009)).  Instead, the error identified by the plaintiff "must strike [the court] as wrong with the force of a five-week-old, unrefrigerated dead fish.  It must be dead wrong." *U.S. Tobacco Coop. Inc. v. Big South Wholesale of Va., LLC*, 899 F.3d 236, 258 (4th Cir. 2018).

In other words, "[m]ere disagreement" with a court's ruling is not a proper basis for a Rule 59(e) motion.  *Hutchinson v. Staton*, 994 F.2d 1076, 1082 (4th Cir. 1993).  Without these "restraint[s]," "there would be no conclusion to motions practice, each motion becoming nothing more than the latest installment in a potentially endless serial that would exhaust the resources of the parties and the court—not to mention its patience." *Pinney v. Nokia*, 402 F.3d 430, 452–53 (4th Cir. 2005); *see also Jackson v. Sprint/United Mgmt. Co.*, 633 F. Supp. 3d 741, 746 (D. Md. 2022).

## IV.   Discussion

Much of plaintiff's Motion is devoted to presenting arguments in rebuttal to defendant's contentions in his Summary Judgment Motion (ECF 96). *See* ECF 132 at 10–15. As noted, plaintiff did not respond to the Summary Judgment Motion. *See* Docket.

Nevertheless, plaintiff's failure to respond to the Summary Judgment Motion played no part in my assessment of defendant's entitlement to summary judgment. *See* ECF 129 at 14–15. Indeed, I noted that a "'failure to respond . . . does not fulfill the burdens imposed on moving parties by [Fed. R. Civ. P.] 56.'" *Id.* at 14 (quoting *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993)). Therefore, I wrote, ECF 129 at 15:

> [N]otwithstanding plaintiff's failure to respond, I must first determine whether the evidence that defendant has submitted in support of the Motion [for Summary Judgment] "shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). And, if I conclude that the evidence shows that there is no genuine dispute of material fact, I must then determine whether the undisputed facts establish that "the movant is entitled to judgment as a matter of law." *Id.*

Applying this standard, I concluded that there was no genuine dispute of material fact "that plaintiff handled her phone while operating her motor vehicle in defendant's vicinity, and that defendant observed her handling her phone." ECF 129 at 17. And, I determined that defendant was entitled to judgment as a matter of law because the undisputed facts established that Warrenfeltz's "stop of plaintiff was justified by reasonable, articulable suspicion that she was using her phone in a manner prohibited by" Md. Code (2020 Repl. Vol., 2023 Supp.), § 21-1124.1 and § 21-1124.2 of the Transportation Article ("Transp."). ECF 129 at 24.

In particular, Transp. § 21-1124.1(b) states, in relevant part, that "an individual may not use a text messaging device to write, send, or read a text message or an electronic message while operating a motor vehicle in the travel portion of the roadway." And, Transp. § 21-1124.2(d)(2) provides: "A driver of a motor vehicle that is in motion may not use the driver's hands to use a

handheld telephone other than to initiate or terminate a wireless telephone call or to turn on or turn off the handheld telephone."

Rule 59(e) is not a means by which a plaintiff may present a belated response to a motion for summary judgment.  *See Pac. Ins. Co.*, 148 F.3d at 403 (recognizing that a party may not use a Rule 59(e) motion to "raise arguments [that] could have been raised prior to the issuance of the judgment"); *see also Matter of Reese*, 91 F.3d at 39  ("A motion under Rule 59(e) is not authorized to enable a party to complete presenting his case after the court has ruled against him.") (citation and internal quotation marks omitted).  Plaintiff's Rule 59(e) Motion is little more than an attempt to do so.  For that reason, it is improper.

Plaintiff also contends that "new evidence regarding certain facts this Court considered in its Memorandum" Opinion of May 14, 2024 (ECF 129) . . . without doubt refute the Court's basis for granting Summary Judgment to the Defendant."  ECF 132 at 4–5.  The "new evidence" plaintiff refers to consists of the following:   a "[p]icture of a type Four (4) Lane Highway with lane demarcations,"  *id.* at 20; a photograph of earbuds, *id.* at 21; a photograph of a "Portion of JFK Memorial Highway at Mile Marker 75 near Exit 74 Route 152 Fallston Joppa,"  *id.* at 22; excerpts from plaintiff's deposition, *id.* at 23–24, ECF 132-1; "Photos of actual 2017 Hyundai Santa Fe SUV taken from a Gaithersburg, Maryland dealership on October 23, 2024," ECF 132 at 25–28; "pics . . . from an online sale listing of a used **Santa Fe Sport**," *id.* at 29–33 (emphasis in ECF 132); a "Bill for Towing Budget Rental Car that was originally rented to Plaintiff, Veronica Ogunsula," *id.* at 34; a "VIN Vehicle Verification from the National Highway Transportation Safety Administration," *id.* at 34–36; a "Budget Rental Care Reservation and Receipt," *id.* at 37; a table that appears to include certain call records, *id.* at 38–40; an email from "Petr Stretka," a "Senior Specialist" in "Legal & Emergency Response" at T-Mobile, *id.* at 41; a statement by the

"Custodian of Records" at T-Mobile, *id.* at 42; a document labeled "Call log from SMSRestore Android Application For V. Ogunsula Cellphone," *id.* at 43; and charts labeled "WARRENFELTZ TOTAL TRAFFIC STOPS" and "Warrenfeltz Harford County Traffic Stops." *Id.* at 44.

Plaintiff does not contend that the exhibits were not available to her before the entry of judgment. *See* Wright and Miller 1995 § 2810.1 ("The Rule 59(e) motion may not be used to . . . present evidence[] that could have been raised prior to the entry of judgment."). Nor has she "produce[d] a legitimate justification for not presenting the evidence during the earlier proceeding." *Pac. Ins. Co.*, 148 F.3d at 403 (citations and internal quotation marks omitted). In effect, plaintiff seeks to use Rule 59(e) to excuse the belated submission of certain information that she believes could have affected the Court's assessment of the Summary Judgment Motion. This is plainly an impermissible use of the Rule.

In sum, plaintiff has not identified any basis for relief after judgment pursuant to Fed. R. Civ. P. 59(e).

## V.      Conclusion

The Court recognizes that plaintiff experienced an unfortunate ordeal after being stopped by Trooper Warrenfeltz. But, the evidence, even when considered in the light most favorable to plaintiff, demonstrates that Trooper Warrenfeltz lawfully performed his job duties. He had a legal basis to stop plaintiff and, during the stop, he learned that there was a warrant for plaintiff's arrest. Therefore, he had a duty to take her into custody. *See Utah v. Strieff*, 579 U.S. 232, 241 (2016) ("'A warrant is a judicial mandate to an officer to conduct a search or make an arrest, and the officer has a sworn duty to carry out its provisions.'") (quoting *United States v. Leon*, 468 U.S. 897, 920 n.21 (1984)). That there was an out-of-State warrant for plaintiff's arrest—later withdrawn—was not the fault of Trooper Warrenfeltz.

For the foregoing reasons, I shall deny the Motion.  ECF 131; ECF 132.  An Order follows, consistent with this Memorandum Opinion.


Date: July 30, 2024                                    _____/s/_____

                                                       Ellen Lipton Hollander
                                                       United States District Judge

16